[Nos. 80477-0; 80553-9.   En Banc.]
Argued September 18, 2008.      Decided April 16, 2009.

THE STATE OF WASHINGTON, *Petitioner*, v. FRANK C. MENDOZA, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID M. HENDERSON, *Respondent*.

914

916

*Frank C. Mendoza*, pro se.

*David M. Henderson*, pro se.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for petitioner.

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, PLLC*) and *Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for respondents.

¶1 STEPHENS, J. — In these consolidated cases, the State seeks review of two Court of Appeals decisions reversing the defendants' sentences and remanding for resentencing. The Court of Appeals in each case held that the sentencing court improperly relied upon the State's assertion of the defendant's criminal history where the defendant did not stipulate to the criminal history and the State did not provide any evidence to establish the prior convictions. We affirm and remand for resentencing, allowing the State an opportunity to prove the defendants' criminal histories.

## FACTS AND PROCEDURAL HISTORY

### *State v. Mendoza*

¶2 In April 2006, a jury convicted Frank C. Mendoza of robbery in the second degree and unlawful imprisonment. The jury found that the victim was particularly vulnerable and the defendant knew or should have known that status. Prior to sentencing, the prosecutor filed a statement of prosecuting attorney (Statement), which presented a summary of the evidence at trial, a list asserting Mendoza's criminal history, the prosecutor's calculation of Mendoza's offender score and appropriate sentencing range, and a sentencing recommendation. With respect to some of the asserted criminal history, the Statement listed the sentenc-

ing court and date of the crime. No documentation was included verifying the convictions. At sentencing, the prosecutor merely summarized Mendoza's criminal history on the record.

¶3 In light of the criminal history, the prosecutor alleged Mendoza's offender score was at least 9, putting the standard sentencing range at 63-84 months for the robbery charge and 51-60 months for the unlawful imprisonment charge. Mendoza did not object to the criminal history in the Statement at sentencing, nor did he affirmatively agree with the prosecutor's representations. The only reference Mendoza's attorney made on the record was the following: "I have reviewed the statement of prosecuting attorney, the terms and conditions with Mr. Mendoza . . . . My recommendation to the Court would be 63 months on the robbery in the second degree and 51 months on the unlawful imprisonment to run concurrent." Report of Proceedings (RP) (Apr. 17, 2006) at 6. The trial court found Mendoza had an offender score of 9 and sentenced him to 84 months and 60 months, respectively, to be served concurrently.

¶4 The Court of Appeals affirmed the convictions but remanded for resentencing because Mendoza had not acknowledged the prior convictions, nor had the State provided any evidence of their existence. *State v. Mendoza*, 139 Wn. App. 693, 695, 162 P.3d 439 (2007). The appeals court held that the State would be allowed to present new evidence to prove Mendoza's criminal history at resentencing. *Id.* The State filed a petition for review, arguing that the sentencing court was allowed to rely on the information provided by the prosecutor in the absence of an objection by Mendoza. We granted review. *State v. Mendoza*, 163 Wn.2d 1017, 180 P.3d 1292 (2008).

*State v. Henderson*

¶5 In May 2006, a jury found David M. Henderson guilty of trafficking in stolen property in the first degree. Prior to sentencing, the prosecutor filed a Statement, which included the prosecutor's assertion of Henderson's criminal

history, listing the crime and sentencing court. In it, the prosecutor recommended that the defendant be given an offender score of 2 based on his prior criminal history, resulting in a standard sentencing range of one year and one day to 14 months. The State provided no documentation establishing the prior convictions.

¶6 At sentencing, the prosecutor summarized the defendant's criminal history and his calculation of the standard range. Henderson did not object but also did not affirmatively acknowledge or stipulate to the Statement or to the prosecutor's representations of his criminal history. The only reference Henderson's attorney made on the record was that he recommended "the bottom [of] the standard range." RP (Aug. 7, 2006) at 86. The sentencing court assigned Henderson an offender score of 2 and sentenced him to one year and one day.

¶7 The Court of Appeals affirmed Henderson's conviction but remanded for resentencing because Henderson did not admit to the criminal history and the State did not prove the existence of the prior convictions through competent evidence. *State v. Henderson*, noted at 139 Wn. App. 1078, 2007 WL 2122422, at *3, 2007 Wash. App. LEXIS 2143, at *6. The State petitioned for review, raising the same arguments as in the *Mendoza* case. Additionally, the State argued that if the case is remanded for resentencing, it should be given the opportunity to submit evidence of Henderson's criminal history. We granted review and consolidated this case with *Mendoza*.[1] *State v. Henderson*, 163 Wn.2d 1022, 185 P.3d 1194 (2008).

## ANALYSIS

¶8 These cases involve challenges to sentences raised for the first time on appeal. Despite our general reluctance

---

[1] We note that the Court of Appeals decisions in these cases conflict with other Court of Appeals cases holding that defendants who do not object to the criminal histories asserted by the State are deemed to have acknowledged those histories under former RCW 9.94A.530(2) (2005). *State v. Weaver*, 140 Wn. App. 349, 357, 166 P.3d 761 (2007); *State v. Fleming*, 140 Wn. App. 132, 137, 170 P.3d 50 (2007).

to address issues not preserved in the trial court, we allow belated challenges to criminal history relied upon by a sentencing court. *State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999). As we explained in *Ford*, the purpose is to preserve the integrity of sentencing laws; allowing review " 'tends to bring sentences in conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court.' " *Id.* at 478 (quoting *State v. Paine*, 69 Wn. App. 873, 884, 850 P.2d 1369 (1993)).

¶9 At sentencing, the State bears the burden to prove the existence of prior convictions by a preponderance of the evidence. *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005). " 'The best evidence of a prior conviction is a certified copy of the judgment.' " *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002) (quoting *Ford*, 137 Wn.2d at 480). It is the obligation of the State, not the defendant, to assure that the record before the sentencing court supports the criminal history determination. *Ford*, 137 Wn.2d at 480. This reflects fundamental principles of due process, which require that a sentencing court base its decision on information bearing " 'some minimal indicium of reliability *beyond mere allegation.*' " *Id.* at 481 (internal quotation marks omitted) (quoting *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984)).

¶10 This is not to say that a defendant cannot affirmatively acknowledge his criminal history and thereby obviate the need for the State to produce evidence. The issue in these cases centers on what is required for an acknowledgment to occur.

¶11 The State makes two arguments. First, it contends that the Statement of the prosecuting attorney comes within the definition of a presentence report under former RCW 9.94A.500(1) (2006) and a defendant's failure to object to the criminal history contained in it serves as an acknowledgment of that history pursuant to former RCW 9.94A-.530(2) (2005). Second, the State asserts that Mendoza and

Henderson otherwise acknowledged the criminal histories presented by the State by making sentencing recommendations consistent with the sentencing range provided by the prosecutor, which presupposed the asserted criminal history.

¶12 Addressing the State's first argument requires us to interpret what the legislature intended as a "presentence report." There is no definition provided in the statutes. To resolve this issue, we look to settled rules of statutory construction. Our goal is to determine the legislature's intent. *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007). If the meaning of the statute is plain, then that meaning is given effect. *Id.* "Plain meaning is discerned from viewing the words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole." *Id.* Where different terms are used in the same statute, the presumption is that the legislature intended they have separate meanings. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). Furthermore, court rules are interpreted as though they were drafted by the legislature. *State v. George*, 160 Wn.2d 727, 735, 158 P.3d 1169 (2007).

¶13 Where a statute is amenable to more than one reasonable interpretation, it is ambiguous and we may look to legislative history. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002). Subsequent legislative changes can be considered when trying to determine legislative intent. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347-48, 804 P.2d 24 (1991) (citing *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S. Ct. 800, 63 L. Ed. 2d 36 (1980)).

¶14 Turning to the statutes at issue, the legislature has mandated that sentencing courts consider:

> the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history . . . .

... If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist. All of this information shall be part of the record.

Former RCW 9.94A.500(1). In imposing a sentence within the standard range, a court "may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing . . . . Acknowledgment includes not objecting to information stated in the presentence reports." Former RCW 9.94A.530(2).[2]

¶15 While "presentence report" is not defined, it is frequently referred to in sentencing statutes as a report completed by the Department of Corrections. In former RCW 9.94A.500(1), there are two references to when a presentence report should be completed: (1) "the court shall . . . order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense" and (2) "[i]f the court determines that the defendant may be a mentally ill person . . . the court shall order the department to complete a presentence report before imposing a sentence." The term "[d]epartment" is defined as the Department of Corrections. Former RCW 9.94A.030(17) (2006). The presentence report, along with all risk assessment reports and the court's findings and conclusions are sent to the Department of Corrections and accompany the offender into custody. Former RCW 9.94A.500(1).

¶16 Criminal Rule 7.1 also provides that a "court may order that a risk assessment or presentence investigation and report be prepared by the Department of Corrections, when authorized by law." CrR 7.1(a). It further states, under the subheading "Other Reports," that "[a]ny interested person . . . may submit a report separate from that furnished by the Department of Corrections." CrR 7.1(d).

---

[2] No question has been raised in these cases about the constitutional limits of the legislature's ability to define when an acknowledgment occurs.

¶17 In arguing that the term "presentence report" encompasses the prosecutor's Statement, the State contends that presentence reports have multiple origins. First, it points to the use of the plural, "presentence *reports*" in former RCW 9.94A.500(1). Second, the State notes that under former RCW 9.94A.500(1), a presentence report also includes victim impact statements and criminal history, even though victim impact statements are not prepared by the Department of Corrections. Therefore, the State concludes presentence reports necessarily have multiple origins, and because criminal history is required to be considered by the court at sentencing, the prosecutor's Statement falls under the umbrella of presentence reports.[3]

¶18 Mendoza and Henderson counter—and the appellate courts below agreed—that the term "presentence report" does not include the prosecutor's Statement. They point to language in CrR 7.1(a) stating that a "court may order that a . . . presentence investigation and report be prepared by the Department of Corrections." Later, the rule allows for "Other Reports" separate from those prepared by the Department of Corrections to be submitted by any interested person. CrR 7.1(d). Given that the rule contemplates that presentence reports be prepared by the Department of Corrections and "Other Reports" be submitted by non-Department of Corrections interested persons, respondents argue that "presentence reports" are only those

---

[3] Division One of the Court of Appeals agreed with this logic, construing the term "presentence reports" to include criminal history information offered by the prosecutor:

> This language is plain. First, the term "presentence reports" is plural, in contrast to the singular "risk assessment report," and therefore necessarily contemplates more than one source. Second, the term "presentence reports" includes, at the least, *any* victim impact statement and *any* statement of criminal history. DOC [Department of Corrections] does not prepare victim impact statements, so it is difficult to see how a DOC report can be the only authorized presentence report.

*Weaver*, 140 Wn. App. at 356. The Court of Appeals in *Weaver* examined only the specific language of part of former RCW 9.94A.500(1). It did not consider the other language in that statute, former RCW 9.94A.530, or CrR 7.1. Further, its contrast of "risk assessment report" is inaccurate, as former RCW 9.94A.500(1) also refers to "risk assessment reports" in the plural.

prepared by the Department of Corrections, and the prosecutor's Statement falls under the category of "Other Reports," if anywhere.

¶19 Both parties' positions are incomplete because to determine the statute's plain meaning, we must take into account the language in the context of the greater statutory scheme governing sentencing procedures. *See Burns*, 161 Wn.2d at 140. Mendoza and Henderson are likely right that within the context of CrR 7.1, a presentence report is something that the Department of Corrections prepares. On the other hand, some ambiguity is created by the use of the term "presentence reports" in former RCW 9.94A-.500(1), as noted by the State. Because we must consider both the rule and the statutes as part of the sentencing scheme, the meaning of the term "presentence report" appears ambiguous.

¶20 The subsequent statutory changes to RCW 9.94A-.500 and RCW 9.94A.530 help resolve any ambiguity. The legislature amended both RCW 9.94A.500 and RCW 9.94A-.530, effective June 12, 2008. The legislature indicated the changes were necessary in light of recent Washington Supreme Court decisions "to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history." LAWS OF 2008, ch. 231, § 1. Specifically, the legislature pointed to *Cadwallader, Lopez, Ford*, and *State v. McCorkle*, 137 Wn.2d 490, 973 P.2d 461 (1999).[4] LAWS OF 2008, ch. 231, § 1.

¶21 RCW 9.94A.500(1) now includes the statement that a "criminal history summary relating to the defendant from the prosecuting authority or from a state, federal, or foreign

---

[4] Confusion on this issue may also have been created by language in *State v. Bergstrom*, 162 Wn.2d 87, 169 P.3d 816 (2007). In *Bergstrom*, the court described the sentencing recommendations of the State and the defendant as "presentence reports," *id.* at 90, and observed that the "defense presentence report" implicitly acknowledged the defendant's criminal history by agreeing with the sentencing range recommended in the State's report, *id.* at 95. The issue in *Bergstrom* was "whether the State may present additional evidence at resentencing." *Id.* at 92. Whether the parties' sentencing statements constituted presentence reports under the statutes was not before the court, and the court's language may simply reflect the characterization of the sentencing statements in the parties' briefing, which described the statements as presentence reports.

governmental agency shall be prima facie evidence of the existence and validity of the convictions listed therein." RCW 9.94A.530(2) now states:

> Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. . . . On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented.

¶22 Of importance here, in amending RCW 9.94A.500, the legislature referred to the document containing a defendant's prior convictions as a "criminal history summary" and not a "presentence report." Further, the new RCW 9.94A.530(2) states that acknowledgment includes not objecting to the presentence reports *and* "not objecting to criminal history presented at the time of sentencing." If the legislature had already considered the criminal history summaries to be presentence reports, then the last sentence would be unnecessary. When the legislature uses different terms, those terms are presumed to have different meanings. *Densley*, 162 Wn.2d at 219. Thus, we hold that the prosecutor's Statement of a defendant's criminal history is not a presentence report for the purposes of former RCW 9.94A.500(1) and former RCW 9.94A.530(2).[5]

¶23 Turning to the State's second argument, the State alleges that even if the prosecutor's Statement is not considered a presentence report, the defendants stipulated to their criminal history by either acknowledging the Statement or recommending a sentence in the range calculated by the prosecuting attorney. The State asserts that even though it has provided no evidence to verify the criminal histories of Mendoza and Henderson, the defendants' im-

---

[5] Even if the subsequent history does not fully resolve the ambiguity, the rule of lenity dictates that we interpret the statute in favor of the defendant where legislative intent is ambiguous. *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005). Under this rule, we would interpret former RCW 9.94A.500(1) as not including the prosecutor's Statement as a presentence report.

plicit acquiescence was sufficient for the sentencing judge in each case to find the criminal convictions existed.

¶24 Mendoza and Henderson respond that there was no stipulation on the record as to the existence of their prior criminal history, and the State has not provided any evidence upon which the sentencing court could have reasonably relied to determine their offender scores. They make no allegation that the prior criminal convictions do not exist, only that the State did not meet its burden of proving that they do.[6]

¶25 While we have never directly addressed the question of what constitutes an acknowledgment of the State's assertion of prior in-state criminal convictions, we have addressed the effect of an acknowledgment in similar contexts. In *Ford*, we held that absent an affirmative agreement, the defendant's failure to object to the State's assertion of out-of-state criminal history did not waive the issue on appeal. 137 Wn.2d at 483-85. There the State asserted—without providing evidence—that three out-of-state convictions were comparable to Washington state felonies. *Id.* at 475. The defendant conceded their existence but argued that they should not be counted as convictions because they resulted only in civil commitments. *Id.* Reversing the sentence, we noted that because a prosecutor's assertions are merely argument and not evidence or facts, all the sentencing court had before it were "bare assertions by the State unsupported by the evidence." *Id.* at 483 & n.3. We emphasized that the State bore the burden of proof, and the defendant's failure to object to the State's assertions did not "relieve the State of its evidentiary obligations." *Id.* at 482. For a sentence to comport with due process, the facts relied upon by the trial court must have some evidentiary basis in the record. *Id.* at 481-82.

---

[6] The absence of any argument as to the accuracy of the criminal histories presented by the State should not be construed against the defendants. This factual issue is not before us on appeal and can be addressed by the sentencing judge at resentencing.

¶26 Next, in *In re Personal Restraint of Goodwin*, we held that a defendant cannot agree to a sentence in excess of the authority provided by statute. 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002). In that case, the defendant pleaded guilty and did not object to the criminal history provided by the State. *Id.* at 864. In a later personal restraint petition, he alleged that some of his previous convictions should have " 'washed out' " and not been counted in his offender score. *Id.* at 864-65. The State conceded that the convictions should not have been included but argued that the defendant waived the issue by agreeing to the criminal history. *Id.* at 865. Because a higher miscalculated offender score amounts to a sentence in excess of that provided by the legislature, we held that generally a defendant cannot waive a challenge to a miscalculated offender score. *Id.* at 874. This general rule applies to legal errors, as we noted that "waiver can be found where the alleged error involves an agreement to the facts, later disputed, or where the alleged error involves a matter of trial court discretion." *Id.*

¶27 Two years after *Goodwin*, we decided *State v. Ross* and held that it was not a violation of due process for a sentencing court to include prior out-of-state convictions the defendant had affirmatively acknowledged existed and were comparable. 152 Wn.2d 220, 233, 95 P.3d 1225 (2004). In *Ross*, one defendant agreed that the State had properly calculated his offender score by using an out-of-state conviction. *Id.* at 225. The other defendant disputed the inclusion of two out-of-state convictions but later conceded that one of them was properly included in his offender score. *Id.* at 226. We reiterated our holding in *Ford* that once a defendant acknowledges the existence and comparability of prior convictions, no further proof is necessary. *Id.* at 233. A defendant cannot challenge his sentence for the first time on appeal unless he shows that an error of fact or law exists within the four corners of the sentence. *Id.* at 231. Since neither defendant could show such an obvious error in his sentence, it was not miscalculated, and any objection to the

inclusion of acknowledged criminal history was waived. *Id.* at 232.

¶28 Finally, in *State v. Bergstrom*, we remanded for resentencing where the lower court erroneously relieved the State of its burden to establish the defendant's criminal history. 162 Wn.2d 87, 89, 169 P.3d 816 (2007). At the sentencing hearing, defendant's counsel acknowledged the criminal history offered by the State when she agreed with its recommendation as to the sentencing range (which presupposed the criminal history) and did not object to the prosecutor's criminal history calculation. *Id.* at 95. Although the defendant, pro se, contested his offender score and argued that some of his prior convictions encompassed the same criminal conduct, the State reasonably relied on defense counsel's earlier affirmative acknowledgment and consequently did not offer any evidence. *Id.* at 96-97. We held that the State should be allowed to introduce evidence of the criminal history at resentencing, emphasizing that it is the State's burden to establish the defendant's criminal history. *Id.* at 93, 97-98.

¶29 These cases provide a foundation for considering what suffices as an acknowledgment in the present context. Importantly, we have emphasized the need for an *affirmative* acknowledgment by the defendant of *facts and information* introduced for the purposes of sentencing. *See Ford*, 137 Wn.2d at 482-83; *Ross*, 152 Wn.2d at 233. The mere failure to object to a prosecutor's assertions of criminal history does not constitute such an acknowledgment. *Ford*, 137 Wn.2d at 483 & n.3. Nor is a defendant deemed to have affirmatively acknowledged the prosecutor's asserted criminal history based on his agreement with the ultimate sentencing recommendation.[7] *Id.* It remains the State's

---

[7] The dissent relies heavily on a Court of Appeals decision, *State v. Nitsch*, 100 Wn. App. 512, 997 P.2d 1000 (2000), for the proposition that the defendants here acknowledged their criminal histories. However, *Nitsch* is distinguishable. The defendant there argued that some of his criminal history constituted the same criminal conduct, but Nitsch did "not challenge the evidentiary sufficiency of the record." *Id.* at 520. Same criminal conduct involves both factual determinations and the exercise of discretion. *Id.* at 523. For this reason, the Court of Appeals in

obligation to establish the criminal history by a preponderance of the evidence. *Id.* at 479-80 (citing *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986)). "Bare assertions" as to criminal history do not substitute for the facts and information a sentencing court requires. *See Ford*, 137 Wn.2d at 483-84.

¶30 Mendoza and Henderson did nothing *affirmative* with respect to their criminal histories. And the sentencing courts below did not have any *facts or information* on which to find by a preponderance of the evidence that the criminal history was valid. Accordingly, we agree with the Court of Appeals that their sentences must be set aside.[8]

---

*Nitsch* was able to distinguish *Ford*: "[What constitutes same criminal conduct] is not merely a calculation problem, or a question of whether the record contains sufficient evidence to support the inclusion of out-of-state convictions in the offender score." *Id.* This case, in contrast, is similar to *Ford* because the defendants' challenges go directly to the sufficiency of the evidence of their criminal histories and do not involve trial court discretion.

Further, while the dissent points out that we have previously cited to *Nitsch*, the dissent fails to note that in so doing we have *distinguished* that case on its facts. *See Ross*, 152 Wn.2d at 232 n.3; *Goodwin*, 146 Wn.2d at 875.

Finally, Nitsch's challenge arose in the context of a plea. *See Nitsch*, 100 Wn. App. at 517. As a result, Nitsch submitted plea documents in which he explicitly stated the standard sentencing range. *Id.* at 522; *see also In re Pers. Restraint of Shale*, 160 Wn.2d 489, 496, 158 P.3d 588 (2007) (defendant explicitly acknowledged his offender score in written plea documents). In contrast, neither Mendoza nor Henderson submitted anything in writing representing their criminal histories or the proper sentencing range.

[8] Though not relied upon by the State in this case, the Court of Appeals in *Weaver* and *Fleming* relied on our decision in *State v. Grayson*, 154 Wn.2d 333, 111 P.3d 1183 (2005), in holding that trial courts can use any information not objected to for sentencing purposes, including the State's unsubstantiated representations of criminal history. *See Weaver*, 140 Wn. App. at 357; *Fleming*, 140 Wn. App. at 137. However, these decisions misconstrue the language in *Grayson*. There, the trial court denied the defendant's request for a drug offender sentencing alternative (DOSA), not because Grayson was ineligible, but because the State no longer had money available for the DOSA program. *Grayson*, 154 Wn.2d at 336-37. We held that the trial court abused its discretion by not meaningfully considering the sentencing alternative based on the facts of Grayson's case. *Id.* at 342. In dicta, we stated, " '[a]cknowledged' facts include all those facts presented or considered during sentencing that are not objected to by the parties." *Id.* at 339. This statement in no way conflicts with our holding today because, as noted in the main text, "facts" upon which a trial court may rely do not encompass "bare assertions" as to criminal history. Defendants do not acknowledge bare assertions merely by failing to object.

In holding as we do today, we disapprove of the Court of Appeals' opinions to the contrary in *Weaver*, 140 Wn. App. at 357, and *Fleming*, 140 Wn. App. at 137-38.

¶31 We next turn to the issue of remedy. There is no question these matters must be remanded for resentencing. The State argues that it should be allowed to offer new evidence to prove the defendants' prior convictions at resentencing. We agree. When a defendant raises a specific objection at sentencing and the State fails to respond with evidence of the defendant's prior convictions, then the State is held to the record as it existed at the sentencing hearing. *Lopez*, 147 Wn.2d at 520-21. But where, as here, there is no objection at sentencing and the State consequently has not had an opportunity to put on its evidence, it is appropriate to allow additional evidence at sentencing. *Id.* In these cases, there were no specific objections and the sentencing court never had an opportunity to correct any errors. Thus, we remand with a full opportunity for the State to prove the defendants' criminal histories at resentencing.[9]

## CONCLUSION

¶32 We hold that a prosecutor's assertions of criminal history are not "presentence reports" within the meaning of former RCW 9.94A.530(2). We further hold that the State must provide evidence of a defendant's criminal history, generally a certified copy of the judgment and sentence, unless the defendant affirmatively acknowledges the criminal history on the record. Because no evidence of the defendants' criminal histories was provided and the defendants did not affirmatively acknowledge their histories, we agree with the Court of Appeals. We affirm and remand for resentencing, allowing the State an opportunity to present evidence of the defendants' criminal histories.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, and CHAMBERS, JJ., concur.

¶33 OWENS, J. (dissenting) — Both Frank Mendoza and David Henderson acknowledged their criminal histories

---

[9] The parties agreed at oral argument that the 2008 versions of RCW 9.94A.500 and RCW 9.94A.530 would apply at resentencing.

during sentencing, and the trial judges appropriately relied on this information when calculating the appropriate sentences. To this day, neither defendant challenges the criminal history presented during sentencing, yet the majority would overturn these sentences, holding that the defendants' acknowledgments were not affirmative enough. Under our precedent, the trial judge was entitled to rely on Mendoza's and Henderson's acknowledgments of their criminal histories. Therefore, I respectfully dissent.

¶34 "In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." Former RCW 9.94A.530(2) (2005). The majority holds that the defendants' failure to object to their sentences did not constitute an affirmative acknowledgment of the criminal history presented during sentencing. What the majority misses, however, is that the defendants did take an affirmative step when their lawyers recommended sentences based on those very criminal histories. Under our precedent, this step was sufficient to constitute an affirmative acknowledgment. As a result, the trial judges were within the spirit and the letter of the law when they relied on the presented and acknowledged criminal histories at sentencing.

¶35 Our prior case law demonstrates that the acknowledgments in this case were sufficient for the judges to rely on. This court has repeatedly cited an on point Court of Appeals case, *State v. Nitsch*, 100 Wn. App. 512, 522, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030, 11 P.3d 827 (2000), as an example of when a defendant has waived his right to challenge his criminal history and offender score. *See, e.g.*, *State v. Ross*, 152 Wn.2d 220, 232 n.3, 95 P.3d 1225 (2004); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 875, 50 P.3d 618 (2002); *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 494-95, 158 P.3d 588 (2007). In *Nitsch*, the Court of Appeals held that by agreeing to the sentencing range offered by the prosecutor (rather than remaining

silent as did the defendant in *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999)), the defendant "inescapably" *acknowledged* his offender score and therefore waived his right to challenge it. *Nitsch*, 100 Wn. App. at 522. Under our precedent, these defendants acknowledged their criminal histories when they agreed to the offender score offered by the prosecutor and waived their right to challenge without a showing that the offender score was incorrect.

¶36 None of the cases cited by the majority provide support for the proposition that defendants who agree with the offender score presented by the prosecutor have somehow not acknowledged their underlying criminal histories. The majority first cites *Ford*, 137 Wn.2d 472, for support, but that case is inapposite. In *Ford*, the prosecution presented the defendant's criminal history and calculated the offender score at 11. At sentencing, the defendant *objected* to the inclusion of three of his convictions and countered that his offender score was only 8. He clearly did not acknowledge his criminal history as presented by the prosecutor; instead he challenged that presented history. In contrast, the defendants in this case both agreed with the prosecutor's offender score calculations and made sentence recommendations based on those score calculations, thereby acknowledging their presented criminal histories.

¶37 Similarly, the defendant in *State v. Bergstrom*, 162 Wn.2d 87, 90-91, 169 P.3d 816 (2007), objected to the calculation of his offender score at his sentencing hearing. This court reiterated that if the defendant had agreed with the State's depiction of his criminal history, he would have waived his right to later challenge it. *Id.* at 94 (citing *Goodwin*, 146 Wn.2d at 874). The defendants in the instant case both agreed with the offender scores at their sentencing hearings by recommending sentences based on those scores. Therefore, under *Bergstrom*, they waived their right to later challenge them.

¶38 The majority's reliance on *Goodwin* is surprising in light of *Goodwin*'s reference to *Nitsch* as an example of when a defendant waives his right to challenge his offender

score. *Goodwin*, 146 Wn.2d at 875. By citing *Nitsch, Goodwin* actually supports the proposition that a defendant who acknowledges the accuracy of the prosecutor's presented sentencing range also acknowledges the accuracy of the defendant's offender score. In *Goodwin*, the defendant collaterally attacked his sentence, alleging that his offender score erroneously included a conviction that should have " 'washed out.' " *Id.* at 864-65. Here, the defendants make no claim that the offender scores were erroneously calculated. They offer no challenge to the criminal histories presented by the prosecutor and claim only that their agreement to the offender score calculations somehow did not constitute an acknowledgment of the underlying criminal histories. *Goodwin* does not support the majority's holding that these defendants—who are not challenging any of the criminal convictions used to calculate the presented offender scores—somehow did not acknowledge their criminal histories when they agreed to offender scores based on those histories. Instead, *Goodwin* provides additional support that defendants who agree to the sentencing range also acknowledge the accuracy of the offender score.

¶39 Finally, the majority cites *Ross*, 152 Wn.2d 220, another case that positively cites *Nitsch*. In *Ross*, this court upheld the sentences of two defendants who had acknowledged their criminal histories at sentencing. This court again held that a trial judge is entitled to rely on a defendant's acknowledgment of his criminal history during sentencing. Nowhere in *Ross* did we state that the acknowledgment must take a particular form. In that case, the defendants acknowledged some of their convictions while challenging others. Here, the defendants did not challenge any of their convictions; instead they accepted the offender scores presented by the prosecutor and then *affirmatively made a recommendation based on those scores*. The trial judges appropriately relied on those acknowledgments during sentencing.

¶40 Taken together, these cases do not support the majority's conclusion that the defendants' acknowledg-

ments of their criminal histories were not sufficiently affirmative. Instead, as discussed above, we have consistently held that, unless there is a legal or factual error in the judgment and sentence, a defendant may not challenge an offender score that he acknowledged.

*Conclusion*

¶41 The law allows trial judges to rely on a defendant's acknowledgment of his criminal history. Under our case law, these defendants acknowledged their criminal histories when they recommended sentences based on the criminal histories presented. The trial judges appropriately relied on the defendants' affirmation of their criminal histories and their sentences should stand.

FAIRHURST and J.M. JOHNSON, JJ., concur with OWENS, J.