

COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 JUN 10 PM 12: 08

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68944-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TONY DALE PENWELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 10, 2013 |
| | ) | |

BECKER, J. — Tony Penwell contends the trial court erred by refusing to reconsider his offender score on this court's remand. The remand was expressly limited to addressing the scope and duration of no contact orders involving Penwell's children. The court correctly refused to entertain Penwell's challenge to his offender score. Penwell's interpretation of RCW 9.94A.530(2) is strained, and we conclude the statute does not entitle him to relitigate his offender score.

On January 19, 2006, a jury found Penwell guilty of first degree assault, second degree rape, unlawful imprisonment, felony harassment, and tampering with a witness for brutal acts involving his pregnant wife, Ke'ida Pratcher. This court affirmed those convictions in 2007. State v. Penwell, noted at 140 Wn. App. 1038 (Oct. 1, 2007), review denied, 165 Wn.2d 1004 (2008). The evidence supporting those convictions showed that Pratcher was a teenage high school student when she met Penwell in 2003. Penwell was a Metro bus driver in his

early 40s. By November 2004, the couple was married and Pratcher was pregnant. On November 2, 2004, in a jealous rage, Penwell repeatedly kicked and beat Pratcher with a fireplace poker, a fireplace shovel, and a propane torch after hog-tying her with rope and duct tape. He doused Pratcher with gasoline, ignited the torch near her, and demanded that she help deliver bombs to her lovers. When the fireplace shovel broke, Penwell continued beating Pratcher with a full-size shovel. He repeatedly kicked her vaginal area and pushed the shovel handle into her anus. Pratcher's injuries were life-threatening, and she lay in a coma for several days. She suffered a traumatic brain injury, a miscarriage, fractures, and various other injuries.

Penwell's two minor daughters from another relationship, ages three and six at the time, were elsewhere in the house during the beating, which lasted several hours. The six-year-old testified that she tried to cover her ears to sounds of the assault until she could not take it anymore and went into the room where Pratcher lay, beaten and hurt. The three-year-old daughter did not testify at trial, but she told a forensic child interviewer that she had seen Penwell hurt Pratcher.

For sentencing, the State calculated Penwell's offender score as a 9 on the first degree assault, his most serious offense, with a standard range sentence of 240 to 318 months. Citing Penwell's "unbelievably prolonged brutal attack" on Pratcher, the court sentenced him to 318 months. The court ordered Penwell to have no contact with his two daughters for the rest of his life, after hearing from their mother about the impact Penwell's actions had on them. The court also

ordered that Penwell have no contact with his two older sons from a previous relationship without the express permission of their mother, and that he have no contact with any minor children unless supervised by an adult with knowledge of his convictions.

As part of his first appeal, Penwell included in his statement of additional grounds a claim that his crimes constituted the same criminal conduct for sentencing purposes. This court determined that the claim did not warrant review because it was not raised at sentencing, where Penwell's attorney affirmatively agreed to the State's calculation of the applicable standard range.

Penwell then filed a personal restraint petition seeking relief from the lifetime no contact orders involving his children and other children. Following our Supreme Court's opinion in In re Pers. Restraint of Rainey, 168 Wn.2d 367, 229 P.3d 686 (2010), we granted that portion of Penwell's petition. Rainey made clear that the trial court must expressly engage in a balancing of the competing interests involved in the imposition of such orders. Our remand order provided that resentencing was to be limited to reconsideration of the no contact orders.

> Because the record does not reflect the required consideration of the necessity for the orders imposed here, both as to scope and as to duration, as well as the possibility for less intrusive means to accomplish the proper goals of protecting Penwell's children and other children in the future, the case must be remanded for resentencing as to the no contact orders imposed by the court.
>   The personal restraint petition is accordingly granted as to Penwell's challenge to the no contact provisions of his judgment and sentence and the case is remanded to the trial court for resentencing with respect to those provisions only.

In re Pers. Restraint of Penwell, noted at 156 Wn. App. 1005, *1 (May 17, 2010) (citation omitted).

3

Notwithstanding the limitation in the remand order, Penwell filed a brief in the trial court challenging not only the no contact orders but also arguing that his convictions for unlawful imprisonment and felony harassment were the same criminal conduct, requiring a reduction in his offender score. While acknowledging the limitation in the remand order, Penwell requested the court's permission to argue the accuracy of the offender score. At the resentencing hearing on May 24, 2012, Penwell's attorney said, "I think we're probably bound by the law of the case doctrine," but asked if the court was willing to consider the offender score argument. The court declined, calling the challenge "untimely." The court then reimposed the lifetime no contact orders as to Penwell's daughters who were in the house at the time of the beating, with the caveat that they could initiate contact with him after they turned 18. The court maintained the order that Penwell have no contact with the two older boys without the permission of their mother until they turned 18.

In this appeal, Penwell contends that under RCW 9.94A.530(2), he was entitled to challenge his offender score at resentencing, regardless of the reason for the remand.

The meaning of a statute is a question of law we review de novo. State v. Mitchell, 169 Wn.2d 437, 442, 237 P.3d 282 (2010). Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature. In re Marriage of Schneider, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). In the absence of ambiguity, we will give effect to the plain meaning of the statutory language. Schneider, 173 Wn.2d at 363.

RCW 9.94A.530(2) of the Sentencing Reform Act defines the evidence a trial court may consider when determining a standard range sentence:

(2) In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence, except as otherwise specified in RCW 9.94A.537. *On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented.*

(Emphasis added).

Penwell relies on the last sentence of this provision, in isolation, to argue the statute unambiguously entitles him to relitigate the issue of his offender score any time appellate review results in a remand for resentencing.

In construing a statute, it is wrong to concentrate solely on the meaning of a sentence in isolation. See Davis v. Dep't of Licensing, 137 Wn.2d 957, 970-71, 977 P.2d 554 (1999). Plain meaning is discerned from viewing the words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole. State v. Mendoza, 165 Wn.2d 913, 921, 205 P.3d 113 (2009).

Taken in context, it is clear that RCW 9.94A.530(2) applies when the trial court has a criminal history issue before it on remand. That was not the case here. Furthermore, what the statute permits is the presentation of "all relevant

evidence regarding criminal history, including criminal history not previously presented." As the State points out, Penwell was not trying to present evidence of his criminal history. He wanted a de novo redetermination of his offender score.

Although Penwell's argument is primarily based on the language of the statute, he devotes a couple of sentences to Mendoza. He argues that in Mendoza, the Supreme Court interpreted the statute as allowing for de novo determination of an offender score any time there is a remand for resentencing. That holding does not appear in Mendoza. On the page cited by Penwell, the statute is mentioned only in connection with presentence reports:

> We hold that a prosecutor's assertions of criminal history are not "presentence reports" within the meaning of former RCW 9.94A.530(2). We further hold that the State must provide evidence of a defendant's criminal history, generally a certified copy of the judgment and sentence, unless the defendant affirmatively acknowledges the criminal history on the record. Because no evidence of the defendants' criminal histories was provided and the defendants did not affirmatively acknowledge their histories, we agree with the Court of Appeals. We affirm and remand for resentencing, allowing the State an opportunity to present evidence of the defendants' criminal histories.

Mendoza, 165 Wn.2d at 930.

In a statement of additional grounds pursuant to RAP 10.10, Penwell raises the same offender score issue. The offender score issue was adequately addressed by Penwell's appellate attorney and fails for the reasons discussed above. Penwell also contends the trial judge disregarded sentencing errors because he did not like Penwell. This generalized and unsupported claim of judicial bias does not merit review.

Affirmed.

WE CONCUR:

_____  Becker, J.

_____  Spearman, ACJ.  _____  Grosse, J.