THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80539-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANK WILLIAM WOFFORD, III, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Frank William Wofford, III appeals his conviction for felony violation of a no-contact order. He argues the State did not provide sufficient evidence to prove beyond a reasonable doubt that he had two prior convictions for no-contact order violations. He further argues the State's offender score, adopted by the trial court, was not supported by the preponderance of the evidence. We conclude there was sufficient evidence of Wofford's prior convictions, but agree Wofford's offender score is not adequately supported by the record. We remand for a recalculation of his offender score and for resentencing.

## FACTS

In December 2016, Island County Superior Court entered a post-conviction no-contact order (NCO) against Frank William Wofford, III (Wofford), restraining him from contacting or being within 500 feet of his parents, Linda Wofford and

Frank Wofford Jr.[1]  The order allowed Wofford to have telephonic contact and limited physical contact with Linda at her discretion, as long as that contact did not take place at Linda and Frank's residence in Coupeville, Washington.

On April 7, 2019, Frank contacted the Island County Sheriff's Office to report the presence of his son on his property in violation of the no-contact order. Sergeant Shawn Warwick responded to Frank's call.  Sergeant Warwick confirmed en route that a valid protection order existed prohibiting Wofford from having contact with his parents.  When he arrived, he spoke to Frank who explained that Wofford was inside his shed.  Sergeant Warwick walked to the shed, opened the door and found Wofford inside.  He then arrested Wofford.  Sergeant Warwick confirmed, at trial, the existence and terms of the December 2016 no-contact order on which he based his arrest.

The State charged Wofford with felony violation of a no-contact order based on the existence of two prior convictions for similar no-contact order violations.  At trial, to establish Wofford had twice been previously convicted of violating provisions of a court order, the State offered two judgment and sentences, one from Island County Superior Court from March 2014, in which Wofford was found guilty of violating a court order in violation of RCW 26.50.110(1) (the 2014 Judgment) and one from Island County District Court dated June 2015, in which he was similarly found guilty of violating a no-contact order in violation of RCW 26.50.110 and RCW 9A.230.040 (the 2015 Judgment).

---

[1] Because Wofford and his parents share the same last name, and father and son share the same first name, we refer to the appellant as Wofford, his father as Frank, and his mother as Linda.  We mean no disrespect in doing so.

The 2014 Judgment identified Wofford by his full name, Frank William Wofford, III. It bore his signature and identified his address as "General Delivery, Cpvl., WA 98239." The 2015 Judgment identified the case number as 66546, and the defendant as "Frank Wofford," but contained no additional identifying information. To prove that the individual identified in the 2015 Judgment was Wofford, the State offered, and the trial court admitted over Wofford's objection, the corresponding district court citation, with the case number 66546, which identified Wofford by his full name, driver's license number, date of birth, address, and physical characteristics.

The trial court instructed the jury that, in order to convict Wofford of the charged crime of violating a court order, the State had to prove that there was a no-contact order in existence on April 7, 2019 applicable to Wofford, that Wofford knew of the existence of this order, that on April 7, 2019, Wofford knowingly violated the order, that Wofford had twice been convicted of violating provisions of a court order, and the act occurred in Island County, Washington. The jury found Wofford guilty of this crime. By special verdict, it also found that Wofford and Frank were members of the same family.

At sentencing, the State asserted Wofford had an offender score of seven based on six prior convictions and his commission of the crime while on community custody. Based on this offender score, the State identified his sentencing range to be 51 to 60 months and recommended a sentence of 52 months of incarceration, followed by eight months of community custody. Wofford did not comment on the offender score but acknowledged the sentencing range was 51 to 60 months.

The trial court adopted the State's offender score and sentencing recommendation. The court orally indicated its intent to waive any financial obligations other than the mandatory $500 victim assessment. Wofford's judgment and sentence, however, included a requirement that, during the eight months of community custody, Wofford had to "pay supervision fees as determined by [Department of Corrections]."

On appeal, Wofford challenges (1) the sufficiency of the State's evidence that he was twice previously convicted of violations of a court order, (2) the trial court's admission of the criminal citation corresponding to the 2015 Judgment, (3) the sufficiency of the evidence supporting his offender score, and (4) the inclusion of DOC supervision fees in the final judgment and sentence.

## ANALYSIS

1. Sufficiency of the evidence of Wofford's prior convictions for violation of a court order

To prove that Wofford committed felony violation of a no-contact order under RCW 26.50.110(5), the State must prove that Wofford committed two prior violations beyond a reasonable doubt. State v. Carmen, 118 Wn. App. 655, 667, 77 P.3d 368 (2003). Wofford argues the evidence the State offered, the 2014 and 2015 Judgments, are insufficient to meet the State's evidentiary burden. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the

evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Id. Credibility issues are for the trier of fact and are not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Wofford contends the State failed to prove that he was the Frank Wofford identified in the 2014 Judgment.[2] "It is axiomatic in criminal trials that the prosecution bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense." State v. Hill, 83 Wn.2d 558, 560, 520 P.2d 618 (1974). "Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated." Id.

Wofford relies on State v. Huber, 129 Wn. App. 499, 119 P.3d 388 (2005), to argue that the State failed to prove that he was the person named in the 2014 judgment. In that case, the State charged Huber with bail jumping. The State introduced certified copies of the defendant's charging document, a written court order requiring his appearance at a hearing, clerk's minutes indicating that he had failed to appear, and a bench warrant commanding the defendant's arrest, but it did not call any witness or otherwise present any other evidence to demonstrate that the defendant was the same individual named in those documents. Id. at 500-01. Division Two of this court stated:

---

[2] Although Wofford challenges the admissibility of the citation leading to the 2015 Judgment, he does not contend the State failed to prove he was the defendant named in that judgment.

> [W]hen criminal liability depends on the accused's being the person to whom a document pertains . . . the State must do more than authenticate and admit the document; it also must show beyond a reasonable doubt that the person named therein is the same person on trial. Because in many instances men bear identical names, the State cannot do this by showing identity of names alone. Rather, it must show, by evidence independent of the record, that the person named therein is the defendant in the present action.

Id. at 502 (quotations omitted). The court reversed Huber's conviction because there was no independent evidence establishing that the person on trial for bail jumping was the same person named in the charging document, court order, clerk's minutes and bench warrant. Id. at 504.

We conclude Huber is distinguishable because the jury here had more evidence than merely matching names. As Huber noted, the State may prove identity through several different means, such as booking photographs, fingerprints, eyewitness identifications, a certified copy of a driver's license, or other "distinctive personal information." Id. at 503. The jury had distinctive personal information here. First, the 2014 Judgment identified the defendant as "Frank William Wofford, III." Wofford's father confirmed his son's full name is Frank William Wofford III. Second, the 2014 Judgment proved that a man with Wofford's exact same name resided in Coupeville, in Island County and was convicted of committing a crime in that county. Wofford's father confirmed he and his wife lived in Coupeville. Lastly, the 2014 Judgment contained Wofford's signature, which is strikingly similar to Wofford's signature on the 2016 no-contact order. A reasonable jury could compare that signature to the signature on the no-contact

order and conclude that the individual named in both documents was the same.[3] Unlike Huber, we have a very unique name, an identity of county of residence, and similar signatures. We conclude the State provided sufficient independent evidence to prove Wofford was the Frank William Wofford, III named in the 2014 Judgment.

2. Admission of the 2015 citation

Wofford next contends the trial court erred in admitting the citation that led to the 2015 Judgment. Wofford first argues the citation was inadmissible under ER 402 because it had no probative value and was thus irrelevant under ER 401. ER 401 defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible under ER 402. A trial court's decision to admit relevant evidence will not be reversed absent manifest abuse of discretion. State v. Hughes, 106 Wn.2d 176, 201, 721 P.2d 902 (1986).

Wofford cites Hadley v. Maxwell, 144 Wn.2d 306, 27 P.3d 600 (2001), for the proposition that a citation is a charging document analogous to an information or complaint, containing mere allegations that are not probative of any fact. This argument is not persuasive. Hadley was a personal injury lawsuit in which an injured motorist argued that an allegedly negligent defendant who paid a traffic fine was collaterally estopped from claiming she had not committed the traffic

---

[3] Because the no-contact order contained additional descriptors, such as Wofford's birthdate and the birthdates of his parents, Frank and Linda, Wofford does not contend that the State failed to prove he was the party identified as the restrained person in that order.

infraction. Id. at 308. The Supreme Court held it was inappropriate to apply collateral estoppel because nothing more than a nominal fine was at stake and there was little incentive to vigorously litigate the issue. Id. In a footnote, the court noted that "Washington has long held a traffic citation is not admissible in a subsequent civil case to prove the party committed the driving lapse." Id. at 314 n.3.

While Wofford's 2015 citation would not be relevant to prove guilt, the State did not offer it for that purpose. It offered the document to establish that the Frank Wofford named in the 2015 Judgment was not Wofford's father, but was in fact, the son:

> So the reason why I include the citation there is because—so the defendant's name is Frank Wofford and one of the protected party's names is Frank Wofford. The defendant is Frank Wofford, III, and the Judgment and Sentence from the City of Oak Harbor just says Frank Wofford. It doesn't say "III."
>
> The State has to prove the identity of—the validity of the prior protection order violations, and that's why . . . I didn't include the incident report for that. It's basically just a citation which lists his name and his identify [sic].

The trial court admitted the citation on this basis. The citation was relevant to establish the identity of the convicted defendant listed in the 2015 judgment and the trial court did not abuse its discretion in so concluding.

Wofford next maintains that, even if relevant, the citation is inadmissible hearsay. But this argument is equally unpersuasive. RCW 5.44.040 provides that certified copies of public records are admissible. The statute is a recognized exception to the hearsay rule. State v. Monson, 53 Wn. App. 854, 857, 771 P.2d 359 (1989). The only limitation on the admissibility of certified copies of public

documents is they must contain facts only and not conclusions involving the exercise of judgment or discretion. Id. at 856.

As the trial court noted, the State offered a certified copy of the 2015 citation and required the State to redact any information in the citation that was not "of a routine nature" and anything "in the nature of opinion[]." Its evidentiary ruling was consistent with RCW 5.44.040 and case law interpreting that statute. The trial court did not abuse its discretion in admitting the redacted 2015 citation.

3. Sufficiency of the evidence of Wofford's offender score

Wofford next argues that the State did not meet its burden of proving his offender score. We agree.

At sentencing, the State bears the burden to prove the existence of prior convictions by a preponderance of the evidence. State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The best evidence of a prior conviction is a certified copy of the judgment, but the State may introduce other comparable documents of record or transcripts of prior proceedings to establish a defendant's criminal history. Id. at 910.

The State contended Wofford's offender score was seven because he had six prior felony convictions or gross misdemeanor convictions in which domestic violence was pleaded and proved, and Wofford was on community custody at the time of the April 2019 offense.[4] To prove the prior convictions, the State offered a

---

[4] Under RCW 9.94A.525(21), because the conviction is a felony domestic violence offense where domestic violence was pleaded and proved, the court counts one point for each prior felony conviction and one point for each prior domestic violence conviction for a "repetitive domestic violence offense defined in RCW 9.94A.030 where domestic violence as defined in RCW 9.94A.030, was pleaded and proven." RCW 9.94A.525(19) provides that an additional point is added if the present conviction is for an offense committed while the defendant was under community custody.

"Certification of Criminal History and Current Offense Sentencing Data," and the declaration of Jennifer Wallace, an employee at the Island County Prosecutor's Office, who testified under oath that she had researched the Washington State Patrol Criminal History database and the Judicial Information System database to verify Wofford's prior convictions.

The certification contained a list of convictions, identified by crime, the date of each crime and sentence, the sentencing court and each case's cause number. Included in this list was (1) the March 2014 conviction in Island County Superior Court for the violation of a protection order, domestic violence; (2) a September 2014 conviction for assault in the fourth degree, domestic violence; (3) the June 2015 conviction for violation of a protection order from the Oak Harbor Municipal Court; (4) a October 2016 conviction for unlawful possession of a firearm in the second degree; (5) a second October 2016 conviction for unlawful possession of a firearm in the second degree; and (6) a November 2018 conviction for a crime identified as "community custody violator." The first and third of these convictions are the only ones supported by certified copies of judgments or any other documents of record.

We conclude the prosecutor's certification is insufficient to support the offender score. First, the March 2014 conviction, a misdemeanor, may be properly counted as a "repetitive domestic violence offense" under RCW 9.94A.525(21) and RCW 9.94A.030(42), but there is insufficient information in the prosecutor's certification from which to draw this conclusion. Second, the November 2018 conviction merely states "community custody violator." While we could assume

this reference means Wofford was convicted under RCW 72.09.310, for failing to maintain contact with the Department of Corrections while on community custody,[5] there is nothing in the certification to support this assumption. Third, there is nothing in the certification to establish that Wofford was on community custody at the time of the 2019 offense.

Wofford relies on Hunley to support his contention that a summary of a defendant's criminal history is insufficient evidence to prove prior convictions. While the State correctly points out that Hunley is distinguishable because that case involved nothing more than a prosecutor's unsworn summary of a defendant's criminal history and here it provided a sworn certification, we still conclude the State's sworn statement is insufficient for this court to evaluate the appropriateness of including the six listed convictions in Wofford's offender score.

The State also argues that it need not prove Wofford's criminal history and community custody status because he acknowledged the existence of the prior convictions in his sentencing memo. The record does not support this argument. Although the State need not produce evidence of a defendant's criminal history when the defendant acknowledges their prior convictions, RCW 9.94A.530(2); Hunley, 175 Wn.2d at 909, the State's evidentiary burden is only relieved if a defendant affirmatively acknowledges the criminal history. Id. at 917. The

---

[5] RCW 72.09.310, entitled "Community custody violator," provides:

> An inmate in community custody who willfully discontinues making himself or herself available to the department for supervision by making his or her whereabouts unknown or by filing to maintain contact with the department as directed by the community corrections officer shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a class C felony under chapter 9A.20 RCW.

defendant does not affirmatively acknowledge their criminal history just by agreeing with the prosecutor's ultimate sentencing recommendation. State v. Mendoza, 165 Wn.2d 913, 928, 205 P.3d 113 (2009). And a defendant's acceptance of a sentencing range is similarly insufficient to constitute an affirmative acknowledgement of their criminal history. State v. Allen, 150 Wn. App. 300, 315-16, 207 P.3d 483 (2009). Wofford accepted the State's sentencing range of 51 to 60 months. He did not affirmatively acknowledge the accuracy of the State's certification of his criminal history.

Because the State failed to provide sufficient evidence to prove Wofford's prior convictions and his community custody status at the time of the 2019 offense, we reverse his sentence and remand for resentencing.

4. Supervision fees

Wofford's judgment and sentence includes a provision that requires him to "pay supervision fees as determined by DOC." The State concedes that the trial court's inclusion of supervision fees in the judgment and sentence was made in error. As in State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020), it appears from the record that the trial court intended to waive all discretionary fees. We therefore accept the State's concession and remand to strike the requirement that Wofford pay supervision fees while in community custody.

We affirm Wofford's conviction, reverse his sentence, and remand to the trial court for resentencing consistent with this opinion.

_Andrus, A.C.J._

WE CONCUR: