[No. 78362-4. En Banc.]
Argued February 27, 2007.     Decided June 7, 2007.
THE STATE OF WASHINGTON, *Respondent*, v. KEITH GREGORY GEORGE, *Petitioner*.

*Sarah McNeel Hrobsky* and *Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Acting Prosecuting Attorney*, and *Deborah A. Dwyer* and *James M. Whisman, Deputies*, for respondent.

¶1 MADSEN, J. — Keith George challenges his conviction on two counts of violating a no-contact order. The charges originated in Renton and Kent Municipal Courts but were

tried in King County Superior Court. George contends that the Renton Municipal Court erred in resetting the time for trial when he was absent from two pretrial hearings while detained by the city of Kent and King County District Court on unrelated charges. He also contends that his conviction on the charge initially filed in Kent violated the prohibition against double jeopardy because the Kent Municipal Court had dismissed the charge with prejudice before it was tried in superior court.

¶2 The central issue in this case is whether the State must demonstrate that it exercised good faith and due diligence in attempting to procure a defendant's presence in court in order to avail itself of CrRLJ 3.3(c)(2)(ii), which requires a trial court to reset the time for trial when a defendant has failed to appear at a proceeding. We hold that application of CrRLJ 3.3(c)(2)(ii) does not require a showing of due diligence. However, we hold that the trial court erred in resetting the time for trial under CrRLJ 3.3(c)(2)(ii) because the period George was detained on unrelated charges is excluded from the time-for-trial calculation under CrRLJ 3.3(e)(2). We also hold that George's right against double jeopardy was not violated and affirm his convictions.

## FACTS

¶3 On February 4, 2004, George was arraigned in Renton Municipal Court on a charge of violating a no-contact order. On February 24, 2004, he was arraigned in Kent Municipal Court on a charge of violating the same no-contact order on a separate occasion. On February 27, 2004, George was charged in King County Superior Court with felony harassment and violation of a no-contact order, the latter charge involving the same incident underlying the Kent charge. He remained in custody while the multiple charges were pending.

¶4 George was absent from two pretrial hearings in Renton while he was detained at the Kent city jail and the King County correctional facility. The Renton court issued a

bench warrant each time and reset the time for trial at George's next appearance.

¶5 George did not object to the trial date set after his first absence. He *did* object to the trial date set after his second absence and noted a motion to dismiss for violation of the time-for-trial rule. Before the motion hearing, the Renton Municipal Court dismissed the charge without prejudice to allow it to be consolidated with the superior court charges.

¶6 A jury trial was scheduled for April 28, 2004 on the Kent charge. The court docket for that day indicates that the court held a pretrial hearing to address the State's motion to amend the information and George's motion to suppress evidence. The trial court dismissed the charge "with prejudice" due to the State's failure to prove that George had been personally served with the no-contact order he was charged with violating.

¶7 On May 11, 2004, George was arraigned in King County Superior Court.[1] On July 13, 2004, the first day of trial, the State amended the information to include the charge that had been dismissed in Renton. The matter proceeded to trial and a jury convicted him as charged.

¶8 On appeal, George argued that the conviction on the charge originally filed in Renton must be reversed for violation of the time-for-trial rule. He contended that the time for trial elapsed before the charge was refiled in superior court. He further argued that the conviction on the charge originally filed in Kent violated the prohibition against double jeopardy because the municipal court had dismissed it "with prejudice."

¶9 The Court of Appeals rejected both claims. The court held that George's absence from the two pretrial hearings in Renton required the trial court to reset the time for trial under the plain language of CrRLJ 3.3(c)(2)(ii) (failure to appear). *State v. George*, 131 Wn. App. 239, 244, 126 P.3d 93 (2006). Relying on *City of Seattle v. Guay*, 150 Wn.2d 288,

---

[1] George's arraignment on the superior court charges had been continued during his detention in Kent and Renton.

76 P.3d 231 (2003), the Court of Appeals rejected George's argument that the State had a duty to transport him to the proceedings, reasoning that there is no mechanism by which a court of limited jurisdiction may compel another court to release a defendant from its custody. *Id.* at 245. The court further held that the State did not violate the prohibition against double jeopardy because jeopardy had not yet attached when the Kent Municipal Court dismissed the charge. *State v. George*, No. 54805-1-I, slip op. (unpublished portion) at 7-8 (Wash. Ct. App. Jan. 17, 2006). George petitioned for review, which we granted at 158 Wn.2d 1010 (2006).

## ANALYSIS

¶10 As a threshold matter, the State contends that George waived his right to object to a violation of the time-for-trial rule by failing to object to the trial dates set following his absences in Renton Municipal Court and by failing to move for dismissal at superior court.

¶11 A defendant waives the right to assert a time-for-trial violation by failing to object within 10 days after receiving notice of a trial date. CrRLJ 3.3(d)(3). George appears to concede that he waived the right to object to the trial date set after his first absence. George did object, however, to the July 15, 2004 trial date set after his second absence. Additionally, George noted an objection to the trial date set in superior court. Accordingly, as did the Court of Appeals, we address the merits of his rule-based speedy trial claim.

### Time-for-Trial Rule

¶12 CrRLJ 3.3 governs the time for trial in courts of limited jurisdiction. A defendant must be brought to trial within 60 days of arraignment if he or she is detained on the pending charge and within 90 days if not. CrRLJ 3.3(b)(1)(i), (2)(i). The time for trial begins anew upon the occurrence of any of eight specified events. CrRLJ 3.3(c)(2)(i)-(viii). The time for trial tolls during nine specified periods of time. CrRLJ 3.3(e)(1)-(9). If the State does not bring the defendant to trial within the time limit determined under the rule, taking into account any appli-

cable resets or exclusions, the charge must be dismissed with prejudice. CrRLJ 3.3(h). However, if a trial was delayed by circumstances not addressed in the rule, the charge may not be dismissed unless the trial delay violated the defendant's constitutional right to a speedy trial. CrRLJ 3.3(a)(4).

¶13 On February 4, 2004, George was arraigned out of custody on the Renton charge. He was not brought to trial during the 132 days that the charge was pending. Thus, the time-for-trial rule was violated unless the time for trial either recommenced or tolled for a sufficient period of time to excuse the delay.

¶14 CrRLJ 3.3(c)(2)(ii) requires the trial court to assign a new start date for the time for trial upon the occurrence of certain events, including:

> Failure to Appear. The failure of the defendant to appear for any proceeding at which the defendant's presence was required. The new commencement date shall be the date of the defendant's next appearance.

¶15 George contends that the State may not avail itself of CrRLJ 3.3(c)(2)(ii) unless it exercises good faith and due diligence in bringing a defendant to court. He argues that the State violated that duty here because it knew he was being held in jail within King County and yet failed to exercise due diligence to secure his presence at his scheduled court appearances. The State's failure to act in good faith and exercise due diligence to bring him to court, George asserts, precluded the court from resetting the time for trial based on his failure to appear. He contends that the 2003 amendments to CrRLJ 3.3 do not alter the State's duty of good faith and due diligence.[2] The State argues that CrRLJ 3.3(c)(2)(ii) includes no due diligence requirement and urges this court not to imply such a duty.

---

[2] George acknowledges the amendments to CrR 4.1 and CrRLJ 4.1, which relieve the State of this duty in the context of arraignment. Suppl. Br. of Pet'r at 11.

¶16 Issues of statutory construction and interpretation are questions of law, reviewed de novo. *State v. O'Connor*, 155 Wn.2d 335, 343, 119 P.3d 806 (2005). This court interprets court rules as though they were drafted by the legislature. *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993). As with statutes, this court gives effect to the plain language of a court rule, as discerned by reading the rule in its entirety and harmonizing all of its provisions. *Id.*

¶17 To determine whether application of CrRLJ 3.3(c)(2)(ii) requires a showing of due diligence by the State, it is helpful to trace the history of that standard as applied to the time-for-trial rule. As originally adopted in 1973, the time-for-trial rule excluded the period of "[d]elay resulting from the absence of the defendant." Former CrR 3.3(d)(5), as adopted at 82 Wn.2d 1126 (1973). This court interpreted the rule in light of the American Bar Association's (ABA) *Standards Relating to Speedy Trial* (Approved Draft 1968) and held that a defendant is "absent" within the meaning of the rule only when (a) his whereabouts was unknown and he is attempting to avoid prosecution or (b) his whereabouts can not be determined by due diligence. *State v. Williams*, 87 Wn.2d 916, 920, 557 P.2d 1311 (1976) (noting that the time-for-trial rule was patterned after the ABA *Standards Relating to Speedy Trial*). In *Williams*, this court concluded that the time for trial did not toll during the time a defendant was confined involuntarily at Western State Hospital because his whereabouts were known and, thus, he was not "absent" within the meaning of the rule.

¶18 In 1976, the provision was amended to apply when a defendant was "absent and thereby unavailable." Former CrR 3.3(f), as amended at 87 Wn.2d 1103 (1976); *see State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978). This change reflected the ABA *Standards* that " '[a] defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.' " *Williams*, 87

Wn.2d at 920 n.3 (quoting ABA STANDARDS RELATING TO SPEEDY TRIAL § 2.3). In *Peterson*, 90 Wn.2d at 428, this court construed the provision as requiring the State to make reasonable efforts to procure the presence of a defendant whose whereabouts are known.

¶19  In *Peterson*, a defendant faced both federal and state charges after committing a robbery. The State took no action on the state charges for several months while the defendant served a term of imprisonment in federal custody. The *Peterson* court declined to read into the act an exception for defendants incarcerated in another jurisdiction, stating,

> CrR 3.3 and its time limits apply uniformly to all persons held to answer for a crime. This includes persons incarcerated elsewhere as well as those who are not. The exceptions in the rule provide all necessary relief from the time limits if a defendant is on trial elsewhere or unavailable through lack of cooperation or delayed cooperation of another jurisdiction.

*Id.* at 429; *see also State v. Alexus*, 91 Wn.2d 492, 588 P.2d 1171 (1979) (defendant not "unavailable" where prosecutor made no effort to locate defendant, who was in custody elsewhere within the state, for a six month period).

¶20  In a 1980 amendment to the rule, the "unavailability exception" was replaced by a more specific list of excluded periods. *See* former CrR 3.3(g)(1)-(7), as amended at 93 Wn.2d 1131-32 (1980); *Greenwood*, 120 Wn.2d 585. Nevertheless, in *State v. Pacheco*, 107 Wn.2d 59, 64-65, 726 P.2d 981 (1986), we did apply a "good faith and due diligence" requirement to the former CrR 3.3(g)(2) exclusion for time spent in " '[p]reliminary proceedings and trial on another charge.' " Again, in *Greenwood*, the court approved a requirement that prosecuting attorneys act in good faith and with due diligence in attempting to bring absent defendants to trial pursuant to former CrR 3.3(c)(1) and (4) (1994). In *State v. Anderson*, 121 Wn.2d 852, 864, 855 P.2d 671 (1993) (quoting former CrR 3.3(g)(6) (1991)), this court held that

> fundamental fairness requires that Washington prosecuting authorities act in good faith and with due diligence in bringing

a defendant to trial in this state once it has been brought to their attention that the defendant "is detained in jail or prison outside the state of Washington or in a federal jail or prison" and the defendant is "subjected to conditions of release not imposed by a court of the State of Washington."

And, most recently in *Guay*, 150 Wn.2d 288, we considered whether the State could avail itself of the exclusion for the period of detention outside the county, former CrRLJ 3.3(g)(5) (2002). We concluded that the State need not demonstrate due diligence as a prerequisite for invoking the exception because no mechanism exists to allow a court of limited jurisdiction to compel another court to release a prisoner.

¶21 In 2003 this court again amended the time-for-trial rule, including a general provision on its "construction":

> The allowable time for trial shall be computed in accordance with this rule. If a trial is timely under the language of this rule, but was delayed by circumstances not addressed in this rule or CrRLJ 4.1 [time for arraignment], the pending charge shall not be dismissed unless the defendant's constitutional right to a speedy trial was violated.

CrRLJ 3.3(a)(4). In explaining the purpose of this provision, the Time-for-Trial Task Force stated:

> Task force members are concerned that appellate court interpretation of the time-for-trial rules has at times expanded the rules by reading in new provisions. The task force believes that the rule, with the proposed revisions, covers the necessary range of time-for-trial issues, so that additional provisions do not need to be read in. Criminal cases should be dismissed under the time-for trial rules only if one of the rules' express provisions have been violated; other time-for-trial issues should be analyzed under the speedy trial provisions of the state and federal constitutions.

WASH. COURTS TIME-FOR-TRIAL TASK FORCE, FINAL REPORT II.B at 12-13 (Oct. 2002) (on file with Admin. Office of Courts), *available at* http://www.courts.wa.gov/programs_orgs/pos_tft (last visited May 31, 2007).

■■ ¶22  CrRLJ 3.3(a)(4) resulted from the task force's concern that the due diligence standards imposed by this court in applying certain sections of the rule were "vague and of limited value in predicting how other cases will be decided." TASK FORCE, FINAL REPORT, *supra*, at 21. The purpose of the 2003 reform was to clarify and simplify the time-for-trial rule, making it easier to apply, and thus avoiding the unpredictability that resulted from the due diligence standards imposed under the former rule. Of course, the fundamental principle that the State must exercise due diligence in bringing a defendant to trial continues in force. However, in refining the rule, the task force intended to embody the State's due diligence obligations in the express requirements of the rule itself. Thus, rather than filling a perceived gap in the time-for-trial rule, and broadening the category of cases subject to automatic dismissal with prejudice, the task force concluded that a court should assume that a defendant is not entitled to dismissal with prejudice unless he or she establishes a violation of the expressed rules or the constitutional right to a speedy trial.

■ ¶23  We agree with the State that CrRLJ 3.3(c)(2)(ii) does not, by its plain language, require the State to demonstrate that it exercised good faith and due diligence in attempting to procure the defendant's presence at trial. However, we disagree that CrRLJ 3.3(c)(2)(ii) is a catchall provision that allows the time for trial to begin anew regardless of the cause for the defendant's absence.

■■ ¶24  An act must be construed as a whole, considering all provisions in relation to one another and harmonizing all rather than rendering any superfluous. *Greenwood*, 120 Wn.2d at 594. The rule contemplates several circumstances whereby a defendant's absence will extend rather than reset the time for trial. For example, absence resulting from a defendant's unexpected illness is addressed by CrRLJ 3.3(e)(8), which tolls the time for trial when there are "unavoidable or unforeseen circumstances" that are beyond the control of the court or the parties. *See* TASK FORCE, FINAL REPORT, *supra*, at 18 (noting that this provision

encompasses, for example, unexpected illnesses of *defendants*, attorneys, and judges). Absence resulting from a defendant's incarceration outside the county or in federal custody is addressed by CrRLJ 3.3(e)(6). And absence resulting from a defendant's involvement in unrelated criminal proceedings is addressed by CrRLJ 3.3(e)(2). Interpreting "failure to appear" to refer to any absence, regardless of the circumstances, renders these provisions superfluous.

¶25 We believe the "failure to appear" provision is intended to apply to a defendant who thwarts the government's attempt to provide a trial within the time limits specified under the rule by absenting himself from a proceeding. Thus, the phrase "failure to appear" refers to a defendant's unexcused absence from a court proceeding. A defendant who negligently or even inadvertently fails to appear when required to do so forfeits the right to a trial within the statutory time-for-trial period, even if the defendant has not deliberately or intentionally absconded. *See, e.g., State v. Newkirk*, 122 Wn.2d 174, 176, 857 P.2d 1030 (1993) (defendant failed to appear following car trouble en route to court); *State v. Wachter*, 71 Wn. App. 80, 856 P.2d 732 (1993) (trial court correctly reset time for trial when the defendant inadvertently failed to appear when her case was called).

¶26 However, CrRLJ 3.3(c)(2)(ii) was not intended to apply when the State elects not to transport the defendant to a proceeding. Instead, the period of time George was detained on the charges filed in Kent Municipal Court and King County Superior Court is excludable under CrRLJ 3.3(e)(2). Under CrRLJ 3.3(e)(2), the time for trial tolls during the period that a defendant is involved with "proceedings on unrelated charges," including "[a]rraignment, pre-trial proceedings, trial and sentencing on an unrelated charge." In this case, the effect of George's absence from the Renton proceedings is controlled by CrRLJ 3.3(e)(2). Thus, the trial court's reliance on CrRLJ 3.3(c)(2)(ii) (failure to appear) to reset the time for trial was error because that

provision does not apply when a defendant is incarcerated on unrelated charges.

¶27 George contends, though, that only the single day that hearings were scheduled in both Kent and Renton Municipal Courts is excluded under CrRLJ 3.3(e)(2). The State asserts that the entire period spent adjudicating unrelated charges is excluded. The Court of Appeals did not address the applicability of CrRLJ 3.3(e)(2).[3]

¶28 This court has consistently excluded the entire period a defendant is detained pending the disposition of unrelated charges from the time-for-trial calculation. *See State v. Swenson*, 150 Wn.2d 181, 75 P.3d 513 (2003) (time for trial tolled on Jefferson County charge while defendant remained in custody pending the disposition of charges in King County); *State v. Huffmeyer*, 145 Wn.2d 52, 58-59, 32 P.3d 996 (2001) (time for trial tolled on Kitsap County charge pending entry of defendant's guilty plea on King County charge); *Greenwood*, 120 Wn.2d at 609 (time for trial tolled on Thurston County charge while defendant remained in custody pending disposition of charges in Pierce County); *Pacheco*, 107 Wn.2d at 66 (excluding the period spent in custody pending the outcome of a parole revocation hearing); *State v. Young*, 89 Wn.2d 613, 574 P.2d 1171 (1978) (excluding the period spent in federal custody pending the disposition of federal charges).

¶29 Here, the record shows that George was detained on unrelated charges for 42 of the 132 days that the Renton charge was pending, including the day on which the

---

[3] The Speedy Trial Act Amendments Act of 1979, 18 U.S.C. § 3161, has an analogous provision, which excludes from the time for trial "any period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. § 3161(h)(1)(D). Like CrRLJ 3.3(e)(2), the provision is ambiguous with respect to whether it excludes only the time actually spent in trial or the entire time in custody pending the disposition of other charges. *See United States v. Bigler*, 810 F.2d 1317, 1320 (5th Cir. 1987). The majority of federal circuits interpret the provision to exclude the entire period necessary for the resolution of the pending charges, including all time spent in pretrial detention. *Id.* A principal rationale for this approach is that it would unduly interfere with the administration of justice to require courts to constantly monitor the proceedings of other courts in order to determine precisely on which days proceedings occur.

charge was dismissed. This period is excluded under CrRLJ 3.3(e)(2). When any period of time is excluded under CrRLJ 3.3(e), the time for trial expires no earlier than 30 days after the end of the excluded period. CrRLJ 3.3(b)(5). Thus, the time for trial on the charge originally filed in Renton had not expired when the municipal court dismissed it without prejudice. The time for trial began anew when the charge was refiled in superior court. CrR 3.3(c)(1); *see* TASK FORCE, FINAL REPORT at 15-16 (time elapsed in district court is no longer deducted from the time for trial when a charge is refiled in superior court). Accordingly, George was brought to trial within the time limit determined by the rule.

## Double Jeopardy

¶30 The double jeopardy clauses of the federal and state constitutions prohibit the State from twice putting a defendant on trial for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *United States v. DiFrancesco*, 449 U.S. 117, 129-30, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980); *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 48, 75 P.3d 488 (2003). The two clauses are essentially identical and afford the same protections. *State v. Linton*, 156 Wn.2d 777, 782 n.3, 783, 132 P.3d 127 (2006).

¶31 George contends that his prosecution in superior court for violation of a no-contact order violates double jeopardy principles because the Kent Municipal Court had dismissed "with prejudice" the charge filed in that court for the same offense.

¶32 The prohibition against double jeopardy applies when (1) jeopardy previously attached, (2) jeopardy was terminated, and (3) the defendant is again prosecuted for the same offense. *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006) (citing *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996)). The sole issue here is whether jeopardy had "attached" on the Kent charge before the Kent Municipal Court dismissed it.

¶33 The "attachment" requirement arises from "the fundamental principle that an accused must suffer jeopardy

before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). Jeopardy does not attach until a defendant is " 'put to trial before the trier of the facts, whether the trier be a jury or a judge.' " *Id.* at 391 (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971)). Generally, jeopardy attaches in a jury trial when the jury is impaneled, and in a bench trial when the first witness is sworn. *State v. Hickman*, 135 Wn.2d 97, 107, 954 P.2d 900 (1998). Jeopardy does not attach "merely because a charge is filed or pretrial proceedings are held." *State v. Higley*, 78 Wn. App. 172, 179, 902 P.2d 659 (1995).

¶34 There is no transcript of the proceedings, but the court docket indicates that on the morning of the scheduled jury trial, the court addressed several pretrial issues, including a motion by the State to amend the information and a motion by George to suppress any prior bad acts. The docket states that after the trial court addressed these matters: "Parties address proof of service. Plaintiff's Exhibit A marked for identification: Proof of Service. Court finds city has not met its burden for proof of personal service. Court dismisses restraining order violations with prejudice." Br. of Appellant, App. A (capitalization omitted).

¶35 It is undisputed that the trial court dismissed the charge before the jury was impaneled and that George did not waive his right to a jury trial. George argues, though, that because the court dismissed the charge "with prejudice," the ruling was functionally equivalent to a final adjudication on the merits. In support, he quotes a 1990 edition of *Black's Law Dictionary*, which defines "dismissal with prejudice" as "an adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause." Suppl. Br. of Pet'r at 18 (quoting Black's Law Dictionary 469 (6th ed. 1990)).[4] But

---

[4] The current version of *Black's Law Dictionary* defines "dismissal with prejudice" as "[a] dismissal, usu[ally] after an adjudication on the merits, barring the plaintiff from prosecuting any later lawsuit on the same claim." Black's Law Dictionary 502 (8th ed. 2004).

like the term "acquittal," the phrase "dismissal with prejudice" "has no talismanic quality for purposes of the Double Jeopardy Clause." *Serfass*, 420 U.S. at 392.

¶36 Whether a dismissal bars subsequent prosecution depends on the procedural context in which it occurs. *Id.* Here, dismissal occurred in the context of pretrial proceedings. Because George had not waived his right to a jury trial, the trial court was without power to find George guilty. The court could only rule on the motions before it. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391-92. The fact that the court dismissed the charge "with prejudice" has no significance in this context because jeopardy had not attached when the trial court dismissed the charge.

¶37 In all the cases relied upon by George, the defendants were tried. *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982) (State retried defendant after an appellate court set aside the jury verdict for insufficient evidence); *DiFrancesco*, 449 U.S. at 133 (imposition of a sentence lower than that sought by the State is not an "implied acquittal" for double jeopardy purposes and does not bar the State from seeking a higher sentence); *Fong Foo v. United States*, 369 U.S. 141, 141-42, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962) (directed verdict after seven days of trial barred reprosecution for the same offense); *Green v. United States*, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) (defendant could not be retried for first degree murder following reversal of the jury's verdict convicting him of a lesser-included offense); *State v. DeVries*, 149 Wn.2d 842, 853, 72 P.3d 748 (2003) (insufficient evidence supported defendant's conviction for knowingly distributing a controlled substance); *City of Spokane v. Lewis*, 16 Wn. App. 791, 559 P.2d 581 (1977) (granting a motion to dismiss for lack of venue at close of State's case-in-chief did not bar retrial because it was not a final adjudication on the merits); *State v. Roybal*, 82 Wn.2d 577, 580, 512 P.2d 718 (1973) (double jeopardy prohibited the

State from prosecuting a defendant under a state statute for an offense to which he pleaded guilty under a parallel city ordinance); *State v. Heaven*, 127 Wn. App. 156, 160-61, 110 P.3d 835 (2005) (jury's acquittal on two counts of child molestation barred retrial).

¶38 George provides no legal authority for the proposition that a dismissal "with prejudice" necessarily bars reprosecution for the same offense regardless of whether a jury was impaneled.

¶39 In rejecting George's double jeopardy argument, the Court of Appeals noted that proof of personal service is not an element of the charged offense. George interprets the remark as the Court of Appeals' disagreement with the trial court's determination that insufficient evidence supported the charge. He argues that double jeopardy applies regardless of whether a reviewing court agrees with the jury's determination that the evidence is insufficient. Suppl. Br. of Pet'r at 18 (citing *Fong Foo*, 369 U.S. at 141-42 (directed verdict after seven days of trial barred retrial notwithstanding appellate court's disagreement with the ruling)). Although that is a correct statement of law, it does not apply here because the trial court was not acting as a trier-of-fact when it addressed the issue of personal service.

¶40 The import of the Court of Appeals' statement is that the trial court apparently was addressing a preliminary question of law rather than resolving a factual question to be decided by a jury. The record is unclear as to the context of the trial court's ruling. The Court of Appeals appears to have reasoned that the trial court apparently was addressing the threshold matter of whether the protection order allegedly violated would support the crime charged. *See State v. Miller*, 156 Wn.2d 23, 31, 123 P.3d 827 (2005) (the validity of a no-contact order is a preliminary question for a judge, not a factual element for the jury). This would be consistent with controlling case law, which holds that proof of personal service is not an essential element of misdemeanor violation of a no-contact order. *City of Auburn v. Solis-Marcial*, 119 Wn. App. 398, 400, 79 P.3d 1174 (2003).

The Court of Appeals was not second-guessing a decision on the merits as to the sufficiency of the evidence, but was pointing out that the dismissal apparently occurred in the context of a pretrial ruling on the admissibility of evidence.

## CONCLUSION

¶41 We hold that application of CrRLJ 3.3(c)(2)(ii) does not require a showing that the State exercised good faith and due diligence. However, in this case, Mr. George did not "fail to appear" for purposes of CrRLJ 3.3(c)(2)(ii) because he was detained on unrelated charges. Rather than resetting the time for trial under CrRLJ 3.3(c)(2)(ii), the trial court should have extended the time for trial under CrRLJ 3.3(e)(2). We hold that George was brought to trial within the time prescribed by CrRLJ 3.3.

¶42 We also hold that jeopardy had not yet attached when the Kent Municipal Court dismissed the charge with prejudice. Accordingly, we affirm Mr. George's convictions.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.