IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48008-5-II |
| Respondent, | |
| v. | |
| JARED DONALD EVANS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Jared Evans appeals his conviction for first degree arson.  He argues that (1) the State committed prosecutorial misconduct by referring to facts not admitted into evidence and misstating the law regarding the State's burden to prove that he acted knowingly and maliciously, (2) the State produced insufficient evidence to prove he acted maliciously, and (3) the "reasonable doubt" jury instruction improperly focused the jury on a search for "the truth."  In his Statement of Additional Grounds for Review (SAG), Evans argues that the trial court violated his right to be free from double jeopardy.  We reject Evans's arguments and affirm his convictions.  We also waive appellate costs.

FACTS

On the evening of February 27, 2015, Jared Evans arrived at St. Anthony Prompt Care, a medical facility in Gig Harbor, Washington.  Evans had a device with a flashlight at one end and a Taser at the other.  The Taser operated by eliciting an electrical charge between its four probes and emitting a spark.  Evans began to click the Taser repeatedly outside of St. Anthony.  Janette Siler, an employee of St. Anthony's, asked Evans to move away from the door.  Evans agreed.

When Siler heard the clicking again, she went back outside to again ask Evans to stop the clicking. She noticed that a large stone garbage can had been moved from the sidewalk into the roadway in front of St. Anthony. Evans told Siler he did not know how the garbage can got there, but helped her move it out of the roadway.

Shortly thereafter, Evans entered the facility and went into a restroom. Approximately four and a half minutes later Kevin Donoghue entered the same restroom. Donoghue saw a person removing burning paper towels from the bathroom garbage can and placing them on the floor. Donoghue left the bathroom, walked into the hallway and yelled, "Fire." Verbatim Report of Proceedings (VRP) (Aug. 25, 2015) at 64. When no one paid attention to him he contacted a staff member and brought her to the restroom. Donoghue then retrieved a fire extinguisher and put out the fire. When Donoghue left the restroom to get help, Evans left the restroom and ran toward the front of the building where he was seen by responding Officer Joseph Hicks of the Gig Harbor Police Department. Evans did not notify anyone in the building that there was a fire in the bathroom. Officer Hicks stopped Evans, and with Evans's consent located the Taser and a cigarette lighter in Evans's bag.[1]

The State charged Evans with one count of first degree arson. At trial, the State admitted surveillance video[2] from St. Anthony showing Evans walking around the facility, holding the Taser and activating it. The video showed sparks emitting from the Taser. The video also showed Evans entering the bathroom, Donoghue entering the bathroom four and half minutes

---

[1] The police did not confiscate either the Taser or the lighter, and these items were not admitted as evidence.

[2] The video is not in the record on appeal. However, there is extensive testimony in the record about the video's contents.

2

afterwards and immediately reacting to the fire, and Evans running from the bathroom as Donoghue went to get help.

Evans testified that he was at St. Anthony on the day in question, and that he interacted with Siler as described above. However, Evans testified that he did not start the fire in the bathroom, but rather discovered it when he walked in and tried to put it out by removing the burning towels. Evans said he possessed the Taser for self-defense purposes and possessed the lighter to light his cigarettes.

During closing argument, the prosecutor made reference to a Taser's ability to start a fire. Evans did not object. Evans's closing argument centered on the theory that he did not start the fire.

The jury found Evans guilty as charged. Evans appeals.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

A.    *Legal Principles*

To prevail on a claim of prosecutorial misconduct, Evans must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Once a defendant has demonstrated that the prosecutor's conduct was improper, we evaluate the defendant's claim of prejudice under two different standards of review, depending on whether the defendant objected to the misconduct at trial. *Emery*, 174 Wn.2d at 760.

If the defendant did not object, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d 760-61. When there is no objection, we apply

a heightened standard requiring the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

When analyzing prejudice, we look at the comment, not in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). Also, we presume the jury follows the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009).

"In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence." *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203 (2012). In rebuttal, a prosecutor generally is permitted to make arguments that were "invited or provoked by defense counsel and are in reply to his or her acts and statements." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

A person is guilty of first degree arson if he knowingly and maliciously causes a fire or explosion in any building in which there is at the time a human being who is not a participant in the crime. RCW 9A.48.020.

B.    *Referring to Facts Not Admitted Into Evidence*

Evans argues that the State committed prosecutorial misconduct by referring to facts not in evidence. Specifically, he contends that it was misconduct for the prosecutor to argue that Evans's Taser was capable of starting a fire without any testimony on the subject. We disagree.

During the State's closing argument, the prosecutor told the jury that a Taser's electrical charge "obviously creates heat, and that heat can start a fire." VRP (Aug. 27, 2015) at 17. In

4

response, Evans argued in his closing, "That Taser was never confiscated. It was never brought into court. It was never demonstrated it could start a fire. How do we know?" VRP (Aug. 27, 2015) at 25. On rebuttal, the prosecutor continued, "Of course a tazer [sic] can start a fire with paper material. It's an electrical charge. It's quite a bit of heat. It's obvious that that device could be used to start a fire." VRP (Aug. 27, 2015) at 35-36.

Evans contends that the prosecutor's comments amounted to arguing facts not in evidence. It is improper for a prosecutor to make prejudicial arguments based on facts not in evidence. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). However, a prosecutor has wide latitude during closing arguments to draw reasonable inferences from the evidence and to express those inferences to the jury. *Reed*, 168 Wn. App. at 577. The jury heard testimony describing the Taser and how it operated using electric charges. VRP (Aug. 26, 2015) at 59. Evans testified that the surveillance video showed flashes of light coming from the Taser as Evans activated it. Additionally, Officer Hicks testified that when he activated the Taser after apprehending Evans, "a spark emitted between the two probes on the end of it." VRP (Aug. 26, 2015) at 36. We hold that the State's comments amounted to nothing more than a reasonable inference from the evidence.

Nor can Evans show that the comments were so flagrant and ill-intentioned as to create incurable prejudice. First, had counsel objected at trial, the court could have issued a limiting instruction to cure any potential prejudice. Second, while counsel did not request, and the court did not issue, a limiting instruction, the jury was properly instructed that the lawyers' statements were not evidence and that the jury should "disregard any remark, statement, or argument that is not supported by the evidence or the law in [the] instructions." Clerk's Papers (CP) at 51; *State*

5

*v. Montgomery*, 163 Wn.2d 577, 595-96, 183 P.3d 267 (2008). Absent evidence that the jury was unfairly influenced, we presume that the jury followed the court's instructions. *Montgomery*, 163 Wn.2d at 596.

Moreover, Evans cannot show prejudice. Evans carried an additional ignition source—a lighter that he carried to light cigarettes—so the case did not turn only on whether the Taser could start a fire. It is just as probable that the jury believed Evans used the lighter to start the fire. Consequently, Evans's prosecutorial misconduct claim fails.

C.     *Misstating the Law*

Evans also argues that the State committed prosecutorial misconduct by effectively eliminating the mens rea element of arson when it improperly characterized the State's burden to prove Evans knowingly and maliciously started the fire. We disagree.

The prosecutor may not misstate the law to the jury. *State v. Swanson*, 181 Wn. App. 953, 959, 327 P.3d 67 (2014), *review denied*, 181 Wn.2d 1024 (2015). We view prosecutor's allegedly improper remarks in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *Yates*, 161 Wn.2d at 774.

During the State's closing argument, the prosecutor reviewed the "to convict" jury instruction. VRP (Aug. 27, 2015) at 14. The prosecutor explained that it appeared to him that the only element of the charge at issue was whether Evans started the fire. This reasoning was largely consistent with Evans's defense theory which was that he merely found the fire and tried to put it out, but did not start it. On appeal, Evans takes issue with the prosecutor's statement regarding the element that the fire was set knowingly and maliciously. During closing argument,

the prosecutor gave the element a cursory overview stating, "[I]f you determine that the Defendant acted in this case, that the Defendant started the fire, the act in itself is knowing and malicious. Clearly, you don't start a fire unless you know what you're doing, and you don't do so unless you're being malicious under your instructions." VRP (Aug. 17, 2015) at 15. The prosecutor then moved onto the focus of his closing argument, which was whether the evidence showed that Evans started the fire himself.

We hold that the State's comment regarding the knowing and malicious element was not improper. Malice may be inferred when the State provides circumstantial evidence that a defendant intentionally caused a fire. *State v. Clark*, 78 Wn. App. 471, 481, 898 P.2d 854 (1995). A prosecutor has wide latitude during closing arguments to draw reasonable inferences from the evidence and to express those inferences to the jury. *Reed*, 168 Wn. App. at 577. RCW 9A.04.110(12) explicitly states, "Malice *may be inferred* from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse."[3] (Emphasis added).

Even assuming the comment was improper, given the fact that the prosecutor's comment was but a mere moment in the State's closing argument, Evans cannot show that the comment was so flagrant and ill-intentioned as to create incurable prejudice. Had counsel objected at trial, the court could have issued a limiting instruction to cure any potential prejudice.

---

[3] Evans contends that because the jury did not receive a permissive inference instruction, "it was improper for the State to rely on inference." Br. of Appellant 9. However, Evans provides no authority or argument to support his contention and we decline to address it further. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Moreover, the jury was properly instructed on the definitions of knowingly and malice. And the "to convict" instruction explicitly required the jury to find beyond a reasonable doubt that Evans knowingly and maliciously caused the fire. Absent evidence that the jury was unfairly influenced, we presume that the jury followed the court's instructions. *Montgomery*, 163 Wn.2d at 596. Evans's argument that the State's comment "eliminated the *mens rea* from the equation" fails. See Br. of Appellant 8.

## II. INSUFFICIENT EVIDENCE

Evans further argues that the State produced insufficient evidence to support his conviction because the State did not prove Evans acted maliciously. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We consider circumstantial evidence to be as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person commits the crime of arson in the first degree when he knowingly and maliciously causes a fire or explosion in any building in which there is at the time a human being who is not a participant in the crime. Evans argues only that the State was unable to prove he maliciously caused the fire.

"Malice" is defined as "an evil intent, wish, or design to vex, annoy, or injure another person." CP at 58. Malice may be inferred from an act done in willful disregard of the rights of

another, or an act wrongfully done without just cause or excuse. RCW 9A.04.110(12). We infer malice when the State provides circumstantial evidence that a defendant intentionally caused a fire. *Clark*, 78 Wn. App. at 481.

Here, the State proffered evidence of Evans's disruptive behavior at the medical clinic leading up to the fire. Evans was carrying a Taser and a cigarette lighter. The surveillance video showed Evans entering the bathroom. Four and a half minutes later, Donoghue entered the bathroom and witnessed Evans pulling burning paper towels from the garbage can onto the floor, which could be interpreted as Evans attempting to spread the fire. Immediately after being discovered, Evans ran from the building without warning anyone about the fire. Evans only stopped when he was detained outside the building by Officer Hicks.

Taking this evidence in the light most favorable to the State, it is sufficient to support a finding that Evans acted maliciously. Therefore, sufficient evidence supports the jury's verdict.

### III. REASONABLE DOUBT

Evans also argues that the trial court's reasonable doubt jury instruction was constitutionally deficient because it impermissibly focused the jury on a search for the truth of the charge. We disagree.

The trial court's reasonable doubt instruction stated, in part:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 54.

We have rejected the exact argument Evans now makes. *See State v. Jenson*, 194 Wn. App. 900, 378 P.3d 270 (2016). Evans provides no reason for us to reconsider that decision. Accordingly, Evans's argument fails.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his SAG, Evans argues that his conviction violated his right to a fair trial and placed him in double jeopardy. Specifically, Evans argues that the trial court punished him multiple times for the same offense by denying his request to conduct a second interview of a witness 30 days before the start of trial. Evans's double jeopardy claim is meritless.

We review alleged double jeopardy violations de novo. *State v. Fuller*, 169 Wn. App. 797, 832, 282 P.3d 126 (2012). The state and federal double jeopardy clauses protect a defendant from being punished multiple times for the same offense. *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998).

Generally, a double jeopardy violation exists where "(1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law." *State v. Strine*, 176 Wn.2d 742, 752, 293 P.3d 1177 (2013). "Jeopardy does not attach until a defendant 'is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'" *State v. George*, 160 Wn.2d 727, 742, 158 P.3d 1169 (2007) (internal quotation marks omitted) (quoting *Serfass v. United States*, 420 U.S. 377, 391, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975)). As a result, jeopardy does not attach merely because the State files charges or pretrial proceedings occur. *George*, 160 Wn.2d at 742. Jeopardy attaches in a jury trial when the jury is empaneled. *George*, 160 Wn.2d at 742.

Evans argues the trial court put him twice in jeopardy when it denied his request on July 28, 2015 to conduct a second interview of a witness at least 30 days before trial. But the jury was empaneled on August 25, 2015. Accordingly, jeopardy had not attached before the trial court's denial. Additionally, the denial of a pretrial motion does not constitute punishment for an offense. Thus, Evans's double jeopardy argument fails.

APPELLATE COSTS

Evans filed a supplemental brief requesting that if the State substantially prevails in this appeal, we decline to impose appellate costs on him because he claims he is indigent. The State did not respond. We exercise our discretion and decline to impose appellate costs.

Under former RCW 10.73.160(1) (1995), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389.

It appears from the limited trial court record that Evans does not have the present ability to pay appellate costs and it is questionable whether he will have the future ability to pay. The trial court found Evans indigent at trial, and counsel was appointed to represent Evans on appeal. The record does not support, nor does the State argue, that Evans's indigent status is likely to change. RAP 15.2(f).

In conclusion, we affirm Evans's conviction for first degree arson, and we exercise our discretion to waive costs on appeal.

No. 48008-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.