# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57762-3-II |
| Respondent, | |
| v. | |
| MONTY EUGENE HALL JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Monty Hall appeals his conviction for second degree rape of a child. Hall argues that his conviction must be reversed because retrial after the jury was dismissed in the first case violated the prohibition against double jeopardy. Hall also claims ineffective assistance of counsel because counsel (1) failed to elicit testimony that could explain AC's motivations for fabricating her story, (2) failed to object to admission of AC's recorded statement form and related testimony, and (3) repeatedly referred to opposing counsel as his "colleague."

We affirm Hall's convictions. Retrial did not violate the prohibition against double jeopardy because jeopardy had not terminated in the first trial and Hall's right to have his trial completed by a particular tribunal was not violated because discharge of the hung jury was necessary in the proper administration of justice. And Hall did not receive ineffective assistance of counsel because counsel's allegedly deficient conduct was reasonable and, to the extent that this

conduct could be considered deficient performance, it was unlikely to have changed the outcome of the trial.

FACTS

I. BACKGROUND

Thirteen-year-old AC described Monty Hall as like family and a "father-figure." Verbatim Rep. of Proc. (VRP) (Nov. 8, 2022) at 77. AC lived with Monty Hall and his family from August 2021 to June 2022. In June 2022, AC disclosed to her friend, Hall's 16-year-old daughter, MH, that Hall had inserted his finger into her vagina three days prior.

AC reported the incident to law enforcement. Law enforcement took statements from AC and MH. The State charged Hall with second degree rape of a child. The matter proceeded to a jury trial.

II. TRIAL

A. First Trial

After 2 hours and 20 minutes of deliberation, the presiding juror informed the trial court that the jury would not agree on a verdict. The trial court asked counsel whether it should dismiss the jury or ask the presiding juror whether giving the jury additional time might lead to a verdict. Both counsels agreed that the court should inquire if additional time might help the jury reach a decision. The court asked the presiding juror if the jury would be able to reach a verdict if given additional time to deliberate. The presiding juror responded "No." VRP (Aug. 31, 2022) at 206. The court asked the same question of the other jurors, and they all agreed that they would not be able to reach a verdict. The court dismissed the jury and, at the State's request, set the matter on the docket for status review.

B. Second Trial

The State retried the case. In response to a pretrial motion, the trial court ruled that testimony regarding the friendship and falling out between AC and MH would be allowed, but prohibited testimony regarding a romantic relationship between them.

At trial, AC and Hall testified to contradictory accounts of the incident between them. AC testified that Hall cornered her while she was scooping dog food in the bathroom, ran his hands down her hips, put his hands in her pants and penetrated her with his finger, and tried to kiss her. Hall insisted that AC came into the bathroom while he was using it and initiated a kiss. The two of them kissed and then Hall told AC "we can't do this. . . . I love you, but maybe in another life" and that she should find somewhere else to stay. VRP (Nov. 9, 2022) at 160.

Defense counsel sought to undermine AC's credibility on cross examination and in its closing argument. Defense counsel argued that Hall's story was more believable than AC's because AC had no reason to be in the bathroom because it was not her responsibility to feed the dogs. Defense counsel argued that it was unlikely that the events AC described occurred because there was no evidence that AC fought back or made any effort to report the incident until three days later. Similarly, there were no witnesses who noticed anything unusual although there were other people in the house during the incident. Defense counsel elicited testimony from MH that she had seen AC touch Monty in ways other than familial hugs or handshakes. In closing, defense counsel argued that a brief kiss is consistent with MH's testimony about AC touching Hall inappropriately. Defense counsel did not elicit testimony about AC and MH's falling out.

At the State's request, the court admitted a form pertaining to AC's recorded statement that AC signed when Deputy Jackson interviewed her. Deputy Jackson testified that the final paragraph

of the form is a perjury clause which notifies the interviewee that they can be punished for lying. The State clarified "So they are certifying that what they are telling you is true?" and Deputy Jackson responded "Yes." VRP (Nov. 8, 2022) at 105. Defense counsel did not object to admission of the statement or the related testimony. Instead, Defense counsel sought to undermine the recorded statements on cross examination by eliciting testimony that Deputy Jackson could have secured more objective information if MH had not been present during AC's interview.

Throughout trial, defense counsel referred to opposing counsel as "my colleague." VRP (Nov. 8, 2022) at 76, 91, 115, 140, 150; VRP (Nov. 9, 2022) at 165, 183, 188, 191. Defense counsel told each of its witnesses that its "colleague, Ms. Zorn, may have" additional questions at the conclusion of its direct examination. VRP (Nov. 8, 2022) at 76, 140, 150.

The jury found Hall guilty of second degree rape of a child.

DISCUSSION

I. DOUBLE JEOPARDY

Hall argues that the trial court violated the double jeopardy clause because the court's decision to dismiss the jury operated as an acquittal. We disagree.

A. Legal Principles

Both the federal and state double jeopardy clauses "prohibit the State from twice putting a defendant on trial for the same offense." *State v. George*, 160 Wn.2d 727, 741, 158 P.3d 1169 (2007). "The prohibition against double jeopardy applies when (1) jeopardy previously attached, (2) jeopardy was terminated, and (3) the defendant is again prosecuted for the same offense." *Id.* An acquittal is an absolute bar to retrial under the double jeopardy clause. *State v. Wright*, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009).

Ordinarily, the declaration of a mistrial and discharge of the jury over the defendant's objection terminates jeopardy and bars retrial under the prohibition against double jeopardy.[1] *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982). However, discharge of the jury without the defendant's consent will not bar retrial if the discharge is "necessary[ ] in the interest of the proper administration of public justice." *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962). One such circumstance is when the jury is unable to agree on a verdict. *Jones*, 97 Wn.2d at 163. We afford great deference to a trial court's decision to declare a mistrial when it considers the jury deadlocked. *Id.* The trial court reasonably exercises its discretion to dismiss a jury when there are " 'extraordinary and striking circumstances which clearly indicate to a court . . . that the ends of substantial justice cannot be obtained without discontinuing the trial.' " *Id.* at 163 (quoting *State v. Bishop*, 6 Wn. App. 146, 150, 491 P.2d 1359 (1971)). It is well settled that "if the jury, through its foreman and of its own accord, acknowledges that it is hopelessly deadlocked, there would be a factual basis for discharge if the other jurors agree with the foreman. The jury's acknowledgment of hopeless deadlock is an 'extraordinary and striking' circumstance." *Id.* at 164.

B. Analysis

Hall contends that his retrial violated his right to be free from double jeopardy because in his first trial, the trial court's decision to dismiss the jury operated as an acquittal. This is so, Hall argues, because the trial court dismissed the jury too soon after deliberations began, because the trial court did not give defense counsel an opportunity to object before it dismissed the jury, and because the trial court failed to formally state that it was declaring a mistrial.

---

[1] This has been described as a defendant's right to have his trial " 'completed by a particular tribunal.' " *Jones*, 97 Wn.2d at 162 (internal quotation marks omitted) (quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)).

First, with regard to Hall's contention that the trial court's dismissal operated as an acquittal because it dismissed the jury too soon after it indicated that it was deadlocked, we disagree because the trial court's decision to dismiss the jury does not operate as an acquittal where discharge is necessary in the proper administration of justice. *Id.* at 163. And the proper administration of justice requires dismissal where the jury acknowledges that it is hopelessly deadlocked. *Id.* at 163-64. Here, the jury acknowledged that it was hopelessly deadlocked when, after more than two hours of deliberation, the foreman told the court that the jury would not be able to come to a decision, even if given more time to deliberate, and the other jurors agreed.

Hall implicitly asks us to hold that, as a matter of law, nearly two-and-one-half hours of deliberation is an insufficient amount of time to declare a hung jury. We decline to do so. Reviewing courts must accord great deference to a trial judge's decision to declare a mistrial when it considers the jury deadlocked. *Id.* at 163. This deference is warranted because the trial judge is charged with the responsibility of making an inquiry of the jury sufficient to determine that further deliberations would not produce a fair verdict, but not so exhaustive that it creates a risk that a verdict may result from pressures inherent in the situation rather than the judgement of the jurors. *Id.* at 164. Where, as here, the jurors have deliberated for two-and-one-half hours on a two-day trial with simple evidence and the jurors contend that they would be unable to reach a verdict, the court has sufficient grounds to exercise its discretion to discharge the jury.

Next, we disagree with Hall that defense counsel was not given an opportunity to lodge an objection. Counsel was well aware that the question of whether to declare a mistrial was before the court and there is no reason to conclude that counsel was unaware of his right to object on Hall's behalf.

Finally, Hall's assertion that the trial court erred in failing to utter the term "mistrial" elevates form over substance. Hall cites no authority for his suggestion that this performative declaration somehow informs our analysis of his double jeopardy claim. Although the trial court did not use the word "mistrial," the record clearly established that a mistrial occurred. The trial court dismissed the jury after confirming that the jury would not be able to reach a verdict if given additional time to deliberate. The trial court then asked the State if they wanted the matter on the docket for review and the State indicated that it did. There was no question that the trial court declared a mistrial based on the jury's inability to reach a verdict.

Jeopardy did not terminate in Hall's case because the jury was hung. *State v. Fuller*, 185 Wn.2d 30, 42, 367 P.3d 1057 (2016). The trial court properly declared a mistrial and Hall's retrial did not violate Hall's right to be free from double jeopardy.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Hall argues that he received ineffective assistance of counsel because counsel (1) failed to elicit testimony that could explain AC's motivations for fabricating her story, (2) failed to object to the admission of the form AC signed about her recorded statement that contained a perjury clause and the testimony related to the form, and (3) repeatedly referred to opposing counsel as his "colleague." We disagree.

A. Legal Principles

The right to counsel includes the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient, . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d

7

80 (2004). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

To show deficient performance, Hall must show that defense counsel's performance fell below an objective standard of reasonableness based on the record established in the proceedings below. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and Hall bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *Id*. at 335. Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

B. Analysis

First, Hall argues that counsel was ineffective because counsel failed to elicit testimony that could explain AC's motivations for fabricating her story. Specifically, Hall contends that defense counsel was ineffective because he failed to elicit testimony about the deterioration of AC and MH's relationship and about AC touching Hall inappropriately in the months leading up to the incident. However, the choice to undermine AC's credibility through other means was a legitimate tactical decision. A theory that portrayed AC, a child, as the instigator of a physical

romantic or sexual interaction could risk alienating the jury. And even if this decision were deficient performance, there is not a reasonable probability that the desired testimony would change the outcome of the proceeding because Hall admitted that he kissed AC back and therefore that at least some of her testimony was truthful.

Next, Hall contends that counsel was ineffective because he failed to object to the admission of the form AC signed about her recorded statement that contained a perjury clause and the testimony related to the form. Hall specifically argues that the form and the accompanying testimony about the perjury clause in the form constituted hearsay and improper vouching. Even assuming that this conduct was deficient, Hall fails to demonstrate a reasonable probability that the outcome of the proceeding would have been different had counsel lodged an objection. Both Hall and AC testified, under penalty of perjury, and gave conflicting accounts of the incident between them. The jury heard and observed their manner while testifying and determined that AC, not Hall, was credible. Importantly, Deputy Jackson did not testify that *he* believed AC based on her signing the form. He merely testified that she had signed the form with an advisement that she could face a penalty if her statement was untrue. This exchange between the prosecutor and Deputy Jackson was of minor moment in the trial. If there was vouching, it was de minimis at best. Moreover, the jury heard her take the same oath prior to her testimony at trial. Hall has not demonstrated that without Deputy Jackson's explanation of the perjury clause, or the admittance of the form, the outcome of the proceeding would likely have been different.

Finally, Hall argues that counsel was ineffective because he referred to opposing counsel as "my colleague." In Hall's apparent view, a trial, as an adversarial proceeding, should also be a contentious proceeding. He argues that this expression of respect led the jury to believe that the

prosecutor was a person "who can be trusted," which must have harmed his defense. Br. of Appellant at 30. But this case was not about the lawyers, nor should it have been. As the jury was informed through several of the court's instructions, the lawyers' statements and argument are not evidence and the jury is the sole judge of the evidence and the credibility of witnesses. That the trial was not a screaming match between angry combatants is a testament to the professionalism of both counsel in this trial and not a reason to doubt the competency of Hall's trial counsel. This argument is frivolous and we need not address it further.

Hall also argues that even if this court were to find that these perceived errors did not constitute ineffective assistance on their own, taken together they constitute ineffective assistance under the cumulative error doctrine. Under the cumulative error doctrine "a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Hall fails to show error, so the cumulative error doctrine does not apply.

## CONCLUSION

We conclude that Hall's retrial did not violate the prohibition against double jeopardy and that Hall was not deprived of the effective assistance of counsel. We affirm Hall's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 57762-3-II

CRUSER, C.J.

We concur:

LEE, J.

CHE, J.

11